PATRICIA A. MOORE, Plaintiff-Appellee, *v.* HOWARD MOORE, Defendant-Appellant.

First District (5th Division)   Nos. 76-869, 76-1410 cons.

Opinion filed September 16, 1977.

William F. Carmody, of Ross, Scott & Carmody, of Chicago (Edwin A. Strugala, of counsel), for appellant.

Irving Goodman and Louis Z. Grant, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This case is a consolidation of appeals from certain orders in a divorce action granting plaintiff temporary alimony and temporary attorneys' fees. The threshold issue on appeal concerns whether the trial court abused its discretion in entering the orders. Defendant also contends that the court erred in denying his petitions for change of venue; but, inasmuch as they concerned orders entered by the court after it had lost jurisdiction, as will be explained later in this opinion, we will not consider that contention.

The record discloses plaintiff filed a complaint for divorce which included a request for temporary attorneys' fees and court costs. Subsequently, she filed a "Supplement to Complaint" in which she alternatively asked for separate maintenance. Thereafter, a hearing was held on March 8, 1976, following which an order was entered on March 9 requiring defendant to pay $860 per month temporary alimony and $1,500 temporary attorneys' fees. On March 17, defendant petitioned to vacate that order, and a hearing was held on April 5, continued to April 14, and finally on April 19 the court entered an order modifying its order of March 9 to provide temporary alimony of $700 a month and temporary attorneys' fees of $1,400. Defendant filed notices of appeal on April 6 and April 12 from the order of March 9 and another notice of appeal from the order of April 19. Later, defendant filed notices of appeal from four subsequent orders of the court.

The filing of a timely notice of appeal causes jurisdiction of the reviewing court to attach instanter and deprive the trial court of jurisdiction. (*Brehm v. Piotrowski* (1951), 409 Ill. 87, 98 N.E. 725; *People v. Baskin* (1967), 38 Ill. 2d 141, 230 N.E.2d 208.) Here, all of the notices of

appeal were timely, but a question remains as to when the jurisdiction of this court attached.

In this regard, we note the transcript of the April 14 hearing discloses that the trial judge, when informed that notices of appeal had been filed from the order of March 9, stated that he no longer had jurisdiction. From the discussion that followed, it appears that defendant agreed not to proceed with the appeal and, at the request of the court, stated he would submit an order to that effect for the court's signature. The April 14 hearing ended with a statement by plaintiff's attorney that he would prepare an order dismissing the appeal—to which defendant's counsel agreed. We assume this was an agreement to dismiss the appeal under authority of Supreme Court Rule 309(2). (Ill. Rev. Stat. 1975, ch. 110A, par. 309(2).) The order was never presented to the court, but the parties continued to participate in the subsequent hearings as though the appeal had been dismissed.

■■ In any event, on oral argument here the parties have agreed that when the notice of appeal was filed from the order of April 19, the trial court had no jurisdiction to enter the four subsequent orders from which defendant also filed notices of appeal. Thus, the only matter properly before us was the appeal from the April 19 order.

In view thereof, there remains only for our consideration the contention of defendant that the court abused its discretion on April 19 in ordering the payment of $700 monthly alimony and $1,400 temporary attorneys' fees.

■■ An allowance of temporary alimony rests within the sound discretion of the court and will be reversed only upon evidence of an abuse of discretion. (*Eule v. Eule* (1974), 24 Ill. App. 3d 83, 320 N.E.2d 506.) The award is dependent on the parties' circumstances (*Rabin v. Rabin* (1965), 57 Ill. App. 2d 193, 206 N.E.2d 850; *Arado v. Arado* (1917), 281 Ill. 123, 117 N.E. 816) and is based upon an analysis of the income and assets of both parties (*Eule v. Eule*). The supporting evidence must reflect the husband's financial ability is such that he can pay the alimony ordered by the court. *Ulm v. Ulm* (1971), 132 Ill. App. 2d 726, 270 N.E.2d 581.

From the testimony heard and the evidence presented at the hearings prior to the entry of the April 19 order, it appears that plaintiff and defendant separated in October 1975 after a three-year marriage. They had been living in an apartment with a monthly rental of $480, but in October 1975, at about the time of their separation, defendant entered into the lease of another apartment and garage for the rental of $358 per month. Plaintiff moved into the apartment and was still living there at the time of trial. Defendant, however, never resided there; but, instead, lived in another apartment which he rented for $150 per month. It appears also

that defendant had been in business for many years and had acquired stock holdings in certain corporations as follows: 80% in Moore Services, Inc., a public relations firm; 100% in Moore Girls, Inc., an employment agency; 37½% in Abbis Personnel, Inc., and 50% in Moore Employees, Inc., both of which were also employment agencies.

Plaintiff established from income tax returns that in 1974, defendant had an adjusted gross income of over $42,000; that in the same year, Moore Services and Moore Employees had adjusted gross incomes of over $71,000 and $49,000 respectively. Defendant, however, testified that although he received $20,000 from Moore Services in 1974, its net income that year was only $62 and that Moore Employees had no net income in 1974. Income tax returns for 1975, which were received in evidence, disclosed (1) defendant's total income was $23,070—of which $12,500 was salary from Moore Services and $10,475 was miscellaneous income from the same company, with the $95 balance being interest and dividend income; and (2) that his net taxable income for 1975 was $12,982.

Defendant also introduced a financial statement dated March 8, 1976, in which he showed assets of about $16,000 and liabilities exceeding $40,000, which included $13,000 in notes payable to relatives; a $4,500 note payable to a third party; a $5,000 debt owing to plaintiff; and $3,300 was for unpaid income taxes. The statement also showed monthly expenses of $1,432 and gross income of only $1,250 per month—of which he testified that he netted only $950 after taxes. Included in his list of expenses was an obligation under a prior divorce decree to pay a former wife $125 weekly for her support and $114 per month to maintain his life insurance policy for the benefit of his former wife.

An accountant called by defendant testified that balance sheets of the four corporations as of December 31, 1975, showed that Moore Girls had a net profit of $2,267, with a negative book value of $1,650; that Abbis had a net operating loss of $7,225, with a net equity of $4,884; that Moore Employees had a net operating loss of $6,918, with a negative equity of $35,000; and that Moore Services had a net operating profit of $5,049 and a net worth of $14,418.

Defendant admitted that he knew when they married that plaintiff was an epileptic and that an alimony payment of $225 per month she was receiving from a previous marriage would cease when they married. He also admitted that he cancelled the lease on a car which she had used during their marriage. He testified that he had been paying the rent on her apartment, except that he was one month behind on the garage rent— which he stated he would pay. When he and plaintiff lived together, their total monthly expense was about $1,000.

Plaintiff also introduced into evidence a bank loan application of May 9, 1975, in which defendant listed assets of $94,000 and salary income of

$30,000. Concerning this application, defendant testified, as stated above, that his adjusted gross income in 1975 was $23,000, with a net taxable income of $12,982 and, although his salary was $30,000 at the time of the application, his only income at the time of trial was a $1,250 per month counseling fee from the Salvation Army, which was then the only client of Moore Services. He admitted, however, that he received $1,500 compensation from Moore Services in January 1976.

Plaintiff testified that defendant had picked out and entered into the lease of the apartment where she was living and that he promised to pay the rent on it and the garage, as well as to repay the $5,000 she had loaned him. A letter by defendant to that effect was introduced into evidence. She also testified to certain recurring expenses, including the apartment and garage in the amount of $1,049 per month and that, because of insurance and other incidental expenses, she needed $1,200. She stated further that her net worth at the time of trial was $20,000; that her only income was a few hundred dollars in stock dividends; that she was under constant medication for petit mal epilepsy and she is now unable to work because of her physical condition, although she retains a real estate broker's license and earned $7,000 per year before her marriage.

■■ Plaintiff asks here, as she did in the trial court, that we consider defendant's 1974 and 1975 income in determining his ability to pay temporary alimony and attorneys' fees. She suggests that because of his controlling interest in the four corporations, he has permitted or caused them to deteriorate to a nonprofit position and that he has in some manner actually hidden income received in those years. We must reject this suggestion; first, because the record does not support any such conclusion; and second, because plaintiff's able counsel, with all of the discovery means available, were unable to produce any evidence that defendant, in 1975 and 1976, had received or was receiving more income than was indicated in the record or that his testimony concerning his assets and liabilities at the time of trial was not correct.

■■ There being no contradiction in the record, it appears that defendant correctly stated his monthly net income to be $950 at the time of the April 19 hearing. The record also discloses no denial of his testimony of monthly expenses exceeding $1,400 (of which about $600 was an obligation in the divorce decree of his prior marriage) or of his testimony of liabilities in excess of assets. When those facts are considered with the testimony of his wife that she had a net worth of $20,000, we believe the April 19 award of $700 per month temporary alimony is not supported by the record and was an abuse of the court's discretion. In addition, it appears to us that the award of $1,400 temporary attorneys' fees in that order is also excessive.

Attorneys' fees in a divorce proceeding are the primary obligation of

the party for whom the services are rendered, but where the plaintiff shows that he or she is financially unable to pay them and that the other spouse is able to do so, justification exists for an award of fees in favor of plaintiff. (*Cimino v. Cimino* (1968), 93 Ill. App. 2d 412, 236 N.E.2d 299; *Jones v. Jones* (1964), 48 Ill. App. 2d 232, 198 N.E.2d 195; Ill. Rev. Stat. 1975, ch. 40, par. 16.) Allowance of such fees rests in the discretion of the trial court. *Johnston v. Johnston* (1971), 130 Ill. App. 2d 1042, 266 N.E.2d 481; *Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42.

■■ The granting of attorneys' fees has been held to be improper where no evidence is heard as to the items of service which were performed, or as to the basis of the amount requested, or that such fees were reasonable for such services. (*Murphy v. Murphy* (1975), 31 Ill. App. 3d 321, 341, 334 N.E.2d 779; *Dejoie v. Dejoie* (1972), 6 Ill. App. 3d 381, 286 N.E.2d 38.) However, it appears to be the rule that where a party makes no request, as here, for the production of such evidence, the court may award fees based upon the financial condition of the parties and the apparent services rendered as shown in the record. *Johnston v. Johnston; Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282; *Kijowski v. Kijowski* (1962), 36 Ill. App. 2d 94, 183 N.E.2d 583; *Needler v. Needler* (1971), 131 Ill. App. 2d 11, 268 N.E.3d 517; Annot., 10 A.L.R. 3d 280, 299 (1966).

■■ Looking to the record here, we note that the only pleadings filed on behalf of plaintiff prior to the entry of the April 19 order are a three-page complaint for divorce and a one-page "Supplement to Complaint" seeking separate maintenance. There are no affidavits and there is no indication that any depositions, interrogatories or other discovery means were undertaken before the entry of the order. There were, however, hearings concerning temporary alimony and attorneys' fees on March 8, April 5, and April 14, from which it appears that plaintiff's attorney did obtain information before the hearings concerning the financial condition of plaintiff, and he necessarily had discussions with his client. Nevertheless, in view of plaintiff's testimony as to her net worth and defendant's apparent excess of liabilities over assets and monthly expenses greater than his net income, we think that an award of $1,400 temporary attorneys' fees is excessive. We note, however, that defendant did obligate himself to pay the rent of plaintiff's apartment and garage in the total amount of $358 a month and, in view thereof, we are of the opinion that an award of $450 per month temporary alimony and $700 temporary attorneys' fees would be more realistic of the financial condition of the parties in April 1976 and, accordingly, we will modify the April 19 order to reflect those amounts.

■■ Since this matter will be remanded and because temporary awards pending appeal were included in the orders subsequent to April

19, we believe it necessary to point out that the provision in section 15 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 16), which allowed a trial court to award temporary alimony and attorneys' fees "pending appeal" was deleted by the legislature in an amendment effective October 1, 1976.

For the reasons stated, the order of April 19, 1976, is modified by striking the award of $700 monthly temporary alimony and $1,400 temporary attorneys' fees and substituting $450 monthly temporary alimony and $700 temporary attorneys' fees and, as modified, the order is affirmed. It having been agreed that the court had no jurisdiction to enter the other orders appealed from, those of May 3, 1976; June 24, 1976; July 21, 1976; and August 2, 1976, they are reversed. The cause is remanded for further proceedings not inconsistent with the content of this opinion.

Order of April 19, 1976, modified and affirmed as modified; other orders appealed from are reversed. Cause remanded.

Affirmed in part as modified; reversed in part; remanded.

MEJDA and WILSON, JJ., concur.