HELEN LOUISE McARDLE, Plaintiff-Appellee, *v.* FRANK McARDLE, Defendant-Appellant.

Third District   No. 77-44

Opinion filed December 19, 1977.

Gary E. Dienstag, of Haas & Dienstag, Ltd., and Elroy Burciaga, both of Chicago, for appellant.

John V. Hanson, of Hanson & Hanson, of Morris, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The circuit court of Grundy County awarded plaintiff, Helen McArdle, a divorce on the grounds of desertion. Defendant, Frank McArdle,

appeals from that portion of the decree relating solely to financial matters and attorneys' fees.

The parties to this action were married on March 23, 1940, and lived together as husband and wife until their separation on April 5, 1971. No children were born to the parties or adopted by them during the marriage. Shortly after the parties were married, they moved to a 76-acre farm owned by defendant's parents and resided there as tenants. After defendant had left the farm, he directed Wayne Pierard to do the chores and look after the cattle. Since that time, plaintiff has continued to breed the cattle and now has 15 cattle which she owns in partnership with Pierard. The tillable acreage was farmed by Mitchell Corbin as a crop tenant. After the parties separated, defendant inherited the marital farm and certain securities. During the period of separation, defendant paid all real estate taxes on the farm and the necessary inheritance and estate taxes which accrued when he inherited the farm. Prior to the divorce defendant had been operated on for cancer, but was in good health when the divorce was finally granted. Defendant's age does not appear in the record but plaintiff is 56 years old and is in reasonably good health with the exception of high blood pressure. Her sole occupation during the marriage was that of a farm housewife. Though plaintiff is a high school graduate and of at least average intelligence, she was not employed at the time of the divorce, nor does she have any special skills which would assist her in finding employment. Defendant is employed by D. Koerner, Inc., as an operating engineer and earns an average weekly salary of approximately $200 after taxes.

During the years the parties were separated, plaintiff earned from the farm approximately $13,103 in after-tax income. Defendant's after-tax income during the comparable period was approximately $12,000 annually.

The total assets owned by both parties, either jointly or individually, are valued at approximately $180,000, with the major assets being the farm worth approximately $120,000 and securities worth about $30,000. The inheritance, estate, and real estate taxes which defendant paid between 1971 and 1977 total approximately $17,000.

On December 8, 1976, the trial court entered a decree which ordered defendant to pay alimony in gross. The trial court arrived at the award in gross by first computing the present value of the weekly needs of plaintiff as testified to by her, and then reducing this sum by a reasonable amount which plaintiff could expect to receive as wages from employment. Specifically, the trial court awarded plaintiff a life estate in the farm which the trial court valued at $65,300.40. While the method the trial court used to arrive at this amount is not in the record, it appears the value of the life estate was computed by using Illinois inheritance tax tables. The

defendant's remainder interest (more properly designated as a reversion) was valued by the trial court at $55,699.40. The court also awarded plaintiff her car, all cattle, household furnishings, certain other personal property, one-half of all securities owned in joint tenancy, sole ownership of a life insurance policy with a cash surrender value of $10,000, $10,000 in cash, and all income from the 1976 crops.

Following the award of alimony, a hearing was conducted on January 6, 1977, on plaintiff's petition for attorney fees for work performed in the trial court. The court awarded plaintiff's attorney $7,000 (in addition to $650 which defendant had previously paid as an advancement for attorney fees) and also ordered defendant to pay the entire amount of court costs. After defendant filed a notice of appeal, plaintiff filed a motion for fees to defend the appeal and support pending appeal. On January 13, 1977, the motion was presented and defendant appeared in person and represented to the court that his attorney was in Waukegan on a prior scheduled case and could not attend. He stated that his attorney had called plaintiff's attorney and requested a short continuance, which was refused, and also that defendant was personally requesting the court to grant a continuance in the absence of his attorney. After some deprecating remarks about defendant's counsel which we find were totally unwarranted, the trial court refused to allow a continuance. On the representations of plaintiff's attorney, defendant was ordered to pay $4,500 in prospective fees to defend the appeal and $100 per week temporary support pending appeal. The appropriate notice of appeal was filed from this order as well.

Defendant then moved to stay all proceedings in the trial court pending appeal. After the trial court refused his motion, defendant moved orally for a stay of seven days to allow him to file a motion with the appellate court for a stay of proceedings. Defendant's oral motion was refused as well. The trial court then ordered defendant to turn over sufficient securities to the sheriff of Grundy County to be sold pursuant to statute to satisfy the money judgment of $21,500. Upon motion to this court, all proceedings in the trial court were stayed pending appeal.

Subsequent to oral arguments before this court, defendant filed a motion to add additional authority which urged the applicability of the new Illinois Marriage and Dissolution of Marriage Act that became effective October 1, 1977 (Pub. Act 80-923). Specifically, the defendant claimed that by virtue of section 801(d) of that Act, resolution of certain issues on appeal regarding disposition of defendant's inherited property was controlled by the new act. Memoranda on the application of this new legislation were requested by the court and duly filed by both parties.

■■ The first issue we reach is whether the Illinois Marriage and Dissolution of Marriage Act is applicable to this appeal. Section 801(d) of the act provides:

"In any action or proceeding in which an appeal was pending or a new trial was ordered prior to the effective date of this Act, the law in effect at the time of the order sustaining the appeal or the new trial governs the appeal, the new trial and any subsequent trial."

Although section 801(d) represents a provision of a uniform law which has been previously adopted in other States, no cases have been cited by the parties which interpret this section. However, the Commissioner's comments to the uniform laws provide some guidance. Those comments state:

"Sub-section (d) provides that this Act does not apply to appeals that had been perfected and thus were pending at its effective date, to new trials ordered prior to its effective date, or to any subsequent appeals or new trials resulting from these pending appeals or new trials. The purpose of this provision is to allow the correction on appeal or in a new trial of errors made in applying the law in effect at the time of the original hearing pursuant to that law. Changing the rules on appeal or at the new trial seems unfair to the party prejudiced by the error." 9 Uniform Laws Annotated §502, at 514 (1973).

While section 801(d) is not a model of good draftsmanship, we believe it is clear from the foregoing comments that those who initially drafted this section did not intend it to apply to appeals that had been perfected prior to its effective date. Here the appeal was perfected no later than February 1977, a date well in advance of the effective date of this legislation. Even without the benefit of the Commissioner's comments, we would indeed be reluctant to adopt the interpretation of section 801(d) as first urged by defendant. Application of the new act to cases already decided at the trial level would not only be grossly unfair to one of the parties, it would also create an intolerable burden on the judicial system, requiring a court of review to decide issues without the benefits of vigorous advocacy attendant to a hearing on the merits or an initial determination by a trial court. We hold the Illinois Marriage and Dissolution of Marriage Act does not apply to this appeal. Since this case must be remanded for reasons as will appear later, we also hold that upon remand, the trial court must apply the law which existed at the time the orders were entered.

Next, defendant contends the trial court abused its discretion in awarding alimony in gross because the evidence did not warrant departure from the normal practice of awarding periodic alimony. Defendant does not contend that plaintiff is not entitled to alimony, but claims only that the form of the award should have been periodic and not in gross.

The authority to award alimony in gross is derived solely from section 18 of the Divorce Act. (Ill. Rev. Stat. 1975, ch. 40, par. 19.) Whether alimony in gross is justified is a matter reserved to the discretion of the

trial court, to be exercised after due consideration of all facts and circumstances which are in evidence. (*Colvin v. Colvin*, 132 Ill. App. 2d 959, 270 N.E.2d 61.) Whether the award of alimony is periodic or in gross, the decision of the trial court will not be disturbed on review unless found to be against the manifest weight of the evidence. (*Hoffmann v. Hoffmann*, 40 Ill. 2d 344, 239 N.E.2d 792.) To sustain an award of alimony in gross, the recipient spouse must be entitled to alimony and the award must be equitable. (*Persico v. Persico*, 409 Ill. 608, 100 N.E.2d 904; *Palacio v. Palacio*, 33 Ill. App. 3d 1074, 339 N.E.2d 427.) Whether or not the award is equitable is resolved by a determination that special circumstances exist which require a departure from the usual and preferred practice of awarding a deserving spouse periodic alimony. *Hall v. Hall*, 18 Ill. App. 3d 583, 310 N.E.2d 186. See also Neumark, *Property Rights in Divorce*, 62 Ill. B.J. 242 (1974).

Periodic alimony is preferred because the trial court remains in control and the amount of the award may be adjusted as circumstances of the parties require. There are a variety of circumstances that have been held to be sufficient to warrant an award in gross. Among them are excessive drinking (*Dmitroca v. Dmitroca*, 79 Ill. App. 2d 220, 223 N.E.2d 545), illness of the recipient spouse (*Canady v. Canady*, 30 Ill. 2d 440, 197 N.E.2d 42), hazardous nature of the paying spouse's employment (*Rodely v. Rodely*, 28 Ill. 2d 347, 192 N.E.2d 347), irregular employment and regular intoxication (*Persico v. Persico*, 409 Ill. 608, 100 N.E.2d 904), previous failure to support one's spouse (*Smothers v. Smothers*, 25 Ill. 2d 86, 182 N.E.2d 758), fraudulent concealment of assets (*Schasker v. Schasker*, 34 Ill. App. 3d 980, 341 N.E.2d 717), substantial net worth compared to low annual income (*Hall v. Hall*, 18 Ill. App. 3d 583, 310 N.E.2d 186), rancor and suspicion between the parties (*Persico v. Persico*, 409 Ill. 608, 100 N.E.2d 904), and the absence of children (*Rattray v. Rattray*, 43 Ill. App. 3d 853, 351 N.E.2d 701). There is no pat formula for resolving when sufficient special circumstances exist. The form of alimony that is called for must be determined on a case by case basis. The alimony in gross award in each of the foregoing instances was an effort to augment the recipient spouse's financial security by minimizing the risks inherent in periodic alimony. See Neumark, *Property Rights in Divorce*, 62 Ill. B.J. 242 (1974).

In the present case there are a number of these factors which combine to support the award of alimony in gross. Defendant has substantial net worth in comparison to a relatively low annual income. The level of annual income must be judged by the ability of that income to provide for the needs of both parties. Defendant's income as an operating engineer appears to be sufficient for his own needs, but the evidence also demonstrates that defendant would have difficulty in providing for both

the needs of himself and the plaintiff. Hence this factor supports the use of defendant's net worth to satisfy plaintiff's right to alimony. During the period of separation several incidents took place which manifest the existence of suspicion and distrust between the parties. Defendant threatened to plow up pasture land which plaintiff needed for the cattle she was raising, which resulted in plaintiff obtaining an injunction to prohibit defendant from carrying out his stated intent. Defendant contends that if suspicion does exist between the parties, it is not justified. Whether or not the existence of suspicion between the parties is totally justified by the facts is immaterial, it matters only that it does in fact exist and will certainly interfere with the payment and collection of periodic alimony. Furthermore, there are suggestions in the record that defendant has failed to report all of his income for tax purposes and has been dilatory in paying temporary alimony.

■■ In addition to the affirmative indications of the need for an award in gross, some of the reasons for preferring periodic alimony do not exist. Without the presence of children from the marital relationship, the need to be able to modify the alimony of the custodial parent does not exist. The needs of the parties seem to be well established and are not likely to change. While any one of the circumstances referred to above might alone be insufficient to justify alimony in gross, in combination we believe they support the award. The trial court was within its discretion in granting alimony in gross in lieu of periodic alimony.

■■ Defendant argues that the amount of alimony awarded is excessive in light of plaintiff's needs. The total value of the award appears to be $95,173.07, comprised of the following; a life estate in the farm ($65,300.40), cash ($10,000), insurance policies ($10,000), securities and personal property ($4,900) and 1976 farm crops ($4,973.67). Upon examination of the record we believe that the total amount of alimony in gross as awarded by the trial court is not excessive. Defendant does not challenge plaintiff's right to receive alimony, but argues that the weekly allowances for various items which plaintiff claims are required for her support, are either unnecessary or are disproportionate to plaintiff's actual needs. Hence, defendant claims that the final gross award based upon these weekly allowances is likewise excessive. The difficulty with defendant's argument is that the projected financial needs of a spouse in years to come is rarely susceptible to a precise mathematical determination. Furthermore, there is an undefinable element of inflation which ought to be considered when reducing future weekly needs to a single present-day value. The trial court apparently relied upon plaintiff's estimates of her needs and we do not believe the trial court abused its discretion in utilizing plaintiff's estimates to compute the amount of alimony in gross to be awarded.

With the exception of the life estate in the marital farm, we find proper the allocation of assets to satisfy the alimony in gross award. While the court was within its discretion to complete the award of alimony in gross by distributing assets worth $65,300.40, we believe the court erred when it distributed this amount in the form of a life estate in the marital farm with the remaining interest to defendant.

By distributing the farm as a life estate to plaintiff, remainder to defendant, the court deprived defendant of any present possessory interest in the farm. While it is uncontrovertable that defendant's interest in the farm was vested and valuable, the fact remains that defendant's interest may never take effect in possession or enjoyment during defendant's lifetime. Without a possessory estate, defendant is deprived of any realistic opportunity to draw upon the value of his remainder interest should the need arise. Though defendant's interest may be alienable under the law of property, such an interest standing alone does not have a readily available market place in which to be sold.

■■ An additional reason exists for not distributing the farm as a life estate and remainder. During the period of separation of the parties, their relationship has steadily deteriorated to a level of mutual distrust and apparent hostility. Placing the parties in the status of life tenant and remainderman, with all the attendant rights and obligations, creates a continuing relationship which will bring the parties into further contact with one another. To do so under an aura of distrust and hostility is neither proper nor equitable. Alimony in gross should prevent future antagonistic contact, not create it. We must hold that the trial court erred in awarding the marital farm as a life estate and remainder interest.

While we have approved the amount of the award of alimony in gross as indicated previously, the cause must be remanded to allow the trial court to adopt a different plan for satisfying the award of alimony in gross. At this juncture it would be inappropriate to order how that award in gross can best be satisfied, but we merely note that partition of the farm in kind, division of the proceeds from a sale of the farm, a cash award with a lien against the real estate until the cash has been paid, or any combination of the foregoing are among the various alternatives available. While this list is neither exhaustive nor exclusive, it may provide some guidance in achieving an equitable award which will provide both parties with security for future years.

■■ The next issue concerns the trial court's order requiring defendant to pay fees of $7,650 for the work of plaintiff's attorney at trial. Defendant was also ordered to pay $452.35 in costs. Defendant contends that plaintiff should bear the cost of her own attorney's fees. We agree. Allowance of attorneys' fees under section 15 of the Divorce Act (Ill. Rev. Stat. 1975, ch.

40, par. 16) depends upon a showing both that one of the parties is financially unable to pay his own fees and that the opposing party does have such ability. (*Gold v. Gold,* 17 Ill. App. 3d 11, 308 N.E.2d 75.) If the spouse requesting attorneys' fees is unable to pay those fees out of her own funds or out of any award of alimony, whether periodic or in gross, reasonable attorneys' fees and costs may be allowed. (*Pierson v. Pierson,* 31 Ill. App. 3d 106, 334 N.E.2d 838.) The assets plaintiff received by the terms of the rulings of the trial court are worth approximately $95,000. The value of the assets defendant retained is of comparable magnitude. Under the circumstances we believe each party should bear the cost of his or her attorney fees, costs at trial to defendant.

■■ Defendant next contends the trial court committed error in awarding temporary alimony. Pending trial of this cause, defendant was ordered on August 30, 1976, to pay $50 per week as temporary alimony for a term of five weeks. On September 23, 1976, pursuant to the court's own motion, the trial court increased the amount of temporary support to $100 per week. No hearing was conducted at this time. This award was continued pending appeal, again without a hearing. While we neither approve nor condone the procedure utilized in increasing the temporary support award, we believe that in light of the plaintiff's needs and defendant's ability to pay that were later demonstrated at trial, we will affirm the temporary support order of $100 a week pending trial and appeal.

■■ After notice of appeal was filed, plaintiff petitioned the trial court for $4,500 in attorneys' fees to defend the appeal. The only authority by which a trial court may grant attorneys' fees after notice of appeal has been filed was contained in section 15 of the Divorce Act as it existed prior to October 1, 1976. (Ill. Rev. Stat. 1975, ch. 40, par. 16.) Section 15 then provided in part:

> "In case of appeal by the husband or wife, the court in which the decree or order is rendered may grant and enforce payment of such money for her or his defense and such equitable alimony during the pendency of the appeal as to such court shall seem reasonable and proper."

Section 15, as amended by Public Act 79-1360 and effective October 1, 1976, no longer contains any provision for attorneys' fees on appeal. In the absence of specific statutory authority to award attorneys' fees pending appeal, the general rule is that such fees may not be allowed and hence the award in this case is improper. We believe each party should be responsible for his or her own attorneys' fees on appeal.

In summary, the distribution of the marital farm as a life estate to plaintiff and remainder to defendant is reversed and remanded for further

proceedings. The order requiring defendant to pay plaintiff's attorneys' fees for trial and appellate work is reversed. The decree in all other respects is affirmed.

For the foregoing reasons the judgment of the circuit court of Grundy County is affirmed in part, reversed in part, and remanded for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded.

STENGEL, P. J., and BARRY, J., concur.