EILEEN CARVALLO, Plaintiff-Appellant and Cross-Appellee, *v.* EDWARD
CARVALLO, Defendant-Appellee and Cross-Appellant.

First District (4th Division)　No. 77-914

Opinion filed July 6, 1978.

Michael D. Gerstein, of Graney & Gerstein, P.C., of Chicago, for appellant.

Levin & Rosen, Ltd., and Meyer Weinberg, both of Skokie, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Eileen Carvallo, sought payment of alimony allowances claimed to be due her under the terms of the marital settlement agreement incorporated in her judgment for divorce. Defendant, Edward Carvallo, by petition for declaratory judgment, sought interpretation of the terms of the divorce judgment and a ruling that his obligation to pay alimony allowances had terminated.

After an evidentiary hearing, the trial court found for defendant. The court awarded attorney's fees to plaintiff's counsel. Plaintiff appeals, contending the trial court erred in its interpretation and construction of the terms of the divorce judgment. Defendant appeals, contending there

was no legally proper basis for the award of attorney's fees to plaintiff's counsel.

We affirm the trial court.

The parties married in 1972 and separated in early 1976. No children were born to or adopted by the parties. In May of 1976, plaintiff filed suit against defendant for divorce. While the suit for divorce was pending, plaintiff's counsel began negotiations with defendant in an attempt to settle the parties claims against each other and resolve their respective alimony and property rights. The parties eventually executed a marital settlement agreement, drafted by plaintiff's counsel.

A judgment for divorce was entered on August 30, 1976, incorporating the marital settlement agreement. Among other things, plaintiff was awarded most of the personal property and the marital residence which had been held in joint tenancy. Defendant remained obligated to pay various debts and taxes. While unclear from the terms of the marital settlement agreement, it appears that the plaintiff was not obligated to exonerate the defendant from his continuing personal liability on the outstanding mortgage which encumbered the marital residence.

In addition, the judgment for divorce provided:

### "ARTICLE II

1. The Husband shall pay to the Wife as and for her support and maintenance, the sum of $450 per month *which approximates the current mortgage payment including principal interest and taxes on the marital domicile* located at and commonly known as 7224 North Keeler, Lincolnwood, Illinois.

2. *The Wife agrees* that because of her present employment and ability and desire to be efficient in accordance with her current status and circumstances, *to waive any other form of alimony not mentioned in paragraph one above.*

3. The remarriage of the Wife shall terminate the alimony payments as provided in number one above and shall bar her right to any alimony whatsoever at any time ever from the Husband.

\* \* \*

### ARTICLE VII
### MISCELLANEOUS PROVISIONS

\* \* \*[T]hat nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligation on the part of the other to comply with the provisions of this Agreement, or the rights of either party under this Agreement, particularly, *the right of the Wife to seek alimony from the Husband as heretofore provided in Article II of this Agreement.*" (Emphasis added.)

In accordance with the divorce judgment, defendant made payments

of $450 each for the months of September, October and November, 1976. On December 29, 1976, the plaintiff sold the marital residence and, after satisfying the existing mortgage and paying other costs and expenses incident to the sale, retained the balance of the proceeds. Thereupon, the defendant discontinued the monthly alimony payments, asserting that under article II of the judgment for divorce, his obligation to pay alimony terminated upon the sale of the marital residence.[1]

On March 3, 1977, plaintiff filed a petition seeking resumption of the monthly alimony payments, recovery of past-due payments and an award of attorney's fees for her counsel. By way of defense and for affirmative relief, defendant sought a declaratory judgment (Ill. Rev. Stat. 1977, ch. 110, par. 57.1), adjudicating the parties' rights and obligations under the terms of the marital settlement agreement incorporated into the judgment for divorce. Defendant claimed he should not be required to pay attorney's fees to plaintiff's counsel.

Thereafter, on March 3 and 18, 1977, and on April 29, 1977, the trial court conducted evidentiary hearings. The trial court then considered the evidence presented, the arguments of counsel, and the briefs submitted in support of the respective positions of the parties. The trial court concluded that the judgment for divorce was ambiguous as to when alimony payments were to terminate; that extrinsic evidence was admissible to show the actual intention of the parties regarding the ambiguous provisions of the judgment; that the actual intention of the parties was to terminate alimony payments when the mortgage on the marital residence had been satisfied; that upon the sale of the marital residence and satisfaction of the mortgage in December of 1976, alimony payments from the defendant to the plaintiff were properly terminated.

The trial court then entered its final order providing for the termination of alimony payments to plaintiff. The trial court directed in its final order that defendant pay the sum of $500 in installments to plaintiff's counsel for counsel's legal services rendered on behalf of plaintiff.

Thereupon, plaintiff appealed from the order terminating her alimony and defendant appealed from the order directing him to pay attorney's fees to plaintiff's counsel.[2]

OPINION

Initially, plaintiff contends the trial court erred in its interpretation and construction of the alimony provision contained in the divorce judgment. We disagree.

■■■ A consent judgment, like any other written agreement, must be construed to give effect to the intention of the parties. (*Halper v. Halper*

---

[1] On oral argument, counsel for defendant conceded that the December 1976 alimony payment had vested prior to the sale and is due and owing to plaintiff and would be paid.

[2] As this appeal was perfected in May of 1977, the Illinois Marriage and Dissolution of Marriage Act is not applicable. Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq*; *McArdle v. McArdle* (1977), 55 Ill. App. 3d 829, 370 N.E.2d 1309.

(1978), 57 Ill. App. 3d 588, 373 N.E.2d 598.) This intention must be determined from the language employed in the agreement and, where there is no ambiguity, from such language alone. (*Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210; see *Olson v. Olson* (1978), 58 Ill. App. 3d 276, 374 N.E.2d 247.) However, if an ambiguity is found to exist, extrinsic evidence may be admitted to ferret out the parties true intention and to clarify the ambiguity, but not to change or vary the agreement. (*Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745.) An ambiguity exists if the terms of the judgment are capable of being understood in more senses than one or are obscure in meaning through indefiniteness of expression. See *Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210.

■■ The judgment for divorce, as it relates to termination of alimony payments, is equivocal, leaves the true intent of the parties in doubt and was found to be ambiguous by the trial judge. For example, paragraph 1 of article II, provides that defendant will pay plaintiff as "support and maintenance, the sum of $450 per month which approximates the current mortgage payment including principal interest and taxes on the marital domicile." Paragraph 3 states that the "alimony" payments, as described above, shall terminate on remarriage. Reading these provisions together it is unclear whether the payments are directly related to the mortgage expense and were intended to terminate upon satisfaction of the mortgage, as well as upon plaintiff's remarriage. To add to the confusion, paragraph 2 expresses the wife's desire to be self-supporting and expressly states that she "waive[s] any other form of alimony not mentioned in paragraph one."

Plaintiff argues that a reading of the judgment for divorce discloses the parties' intention that defendant support her on a permanent basis unless she remarries. She reasons that the payments should continue, even though the house has been sold, since her monthly mortgage expense has simply been replaced by a monthly rental expense. In addition, plaintiff contends that the alimony was intended as permanent support because she had supported defendant while he attended medical school.

Defendant contends that plaintiff's retention of the proceeds from the sale of the residence, in addition to the otherwise favorable treatment she received under the judgment for divorce, indicate the parties' intention that his obligation to support plaintiff would cease if the residence was sold.

The interpretation and construction of the alimony provision by the trial court, in light of all the surrounding facts as disclosed in the record, will not be set aside unless contrary to the manifest weight of the evidence. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.*

(1977), 49 Ill. App. 3d 258, 364 N.E.2d 939.) A review of the record clearly reveals that the trial court's construction is a reasonable one.

■■ The record discloses that the trial court having first determined that an ambiguity in the meaning of the alimony provision did indeed exist, looked to the extrinsic evidence presented to ascertain the true intention of the parties. In resolving the interpretation and construction of the language found to be ambiguous, the trial court considered the surrounding circumstances leading to the execution of the marital settlement agreement, including the background of the parties, the length of the marriage, the fact that no children were born to or adopted by the parties, their economic and professional circumstances, the terms of the marital settlement agreement and its disposition of the various property interests of the parties, and, more importantly, the intention of the parties as expressed by them during their negotiations resulting in a settlement of their interests. In view of the totality of the circumstances considered by the trial court, plaintiff's analysis of the meaning of the alimony provision cannot be accepted.

It has been suggested that, in this instance, defendant's proper recourse would have been to seek a modification of the divorce judgment based on a change in circumstances. However, in light of the trial court's determination that under the terms of the agreement defendant's alimony obligation ceased upon the sale of the residence and satisfaction of the mortgage, such a procedure was unnecessary. Although some of the evidence presented in the trial court would also be relevant in a modification proceeding, the record discloses the trial court considered only that evidence necessary to its interpretation of the agreement. Moreover, since the marital settlement agreement was drafted by plaintiff's counsel, the defendant having been unrepresented, the terms of the agreement must be construed most strictly against plaintiff. *Bost v. Paulson's Enterprises, Inc.* (1976), 36 Ill. App. 3d 135, 343 N.E.2d 168.

Accordingly, we affirm the trial court's interpretation and construction of the divorce judgment and the trial court's holding that plaintiff's sale of the marital residence terminated defendant's obligation to make any further alimony payments.

We note that the emotionalism with which marital dissolutions abound makes it doubly necessary that the terms and provisions of a marital settlement agreement are clear, precise and definite. Otherwise, like a fire, the flames of controversy, including appeals, will continue to be fed by inexhaustible rancor, contentiousness and misunderstanding.

We will now consider defendant's contention that the award of attorney's fees to counsel for plaintiff was legally impermissible.

Attorney's fees may be awarded in post-decree proceedings (*Matthews v. Matthews* (1976), 42 Ill. App. 3d 1049, 356 N.E.2d 1083; *Bellow v.*

*Bellow* (1976), 40 Ill. App. 3d 442, 352 N.E.2d 427), including actions to enforce provisions of the judgment for divorce (*Cross v. Cross* (1955), 5 Ill. 2d 456, 125 N.E.2d 488; *Walters v. Walters* (1951), 409 Ill. 298, 99 N.E.2d 342). The award of such fees depends upon the particular facts of each case (*Horwitz v. Horwitz* (1970), 130 Ill. App. 2d 424, 264 N.E.2d 723), and necessarily rests in the sound discretion of the trial judge. This discretion will not be reversed unless clearly abused. *Brandel v. Brandel* (1966), 69 Ill. App. 2d 264, 216 N.E.2d 21.

■■ Defendant argues that he did nothing to necessitate plaintiff's resort to judicial action and, therefore, the allowance of attorney's fees was error. (See *Kuhns v. Kuhns* (1972), 7 Ill. App. 3d 884, 288 N.E.2d 884.) This contention is without merit. As a party to the negotiated consent judgment the defendant may not now disclaim any responsibility for its ambiguous nature and the necessity for its interpretation and construction by a court. The record discloses that plaintiff's resort to the judicial process was a good faith attempt to secure her rights under the judgment for divorce as she understood its meaning.

■■ The defendant further contends that since plaintiff's claim was denied, the trial judge abused his discretion in awarding her counsel attorney's fees. (See *Ylonen v. Ylonen* (1954), 2 Ill. 2d 111, 117 N.E.2d 98.) We disagree. The fact that the trial judge did not find in favor of plaintiff did not preclude an award of attorney's fees to her if, as is true here, she had reasonable grounds for bringing the action and instituted the proceedings in good faith.

Finally, defendant urges that the award of attorney's fees was improper because plaintiff is financially able to bear the expense herself. To justify the allowance of attorney's fees, the party seeking this relief must show financial inability to pay and the ability of the other party to do so. (*Moore v. Moore* (1977), 53 Ill. App. 3d 228, 368 N.E.2d 545.) Financial inability exists where to enforce a party's disbursement of available funds would serve to undermine that person's economic stability. *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.

■■■ However, the record discloses that defendant did not request a hearing on either his ability, or plaintiff's inability, to pay attorney's fees. Thus, we consider the defendant's right to a hearing as waived. (*Rattray v. Rattray* (1976), 43 Ill. App. 3d 853, 357 N.E.2d 701.) The trial judge, therefore, could and properly did apply his expertise and experience in this type of proceeding (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282; *Kijowski v. Kijowski* (1962), 36 Ill. App. 2d 94, 183 N.E.2d 583), to evaluate both the relative financial status of the parties as disclosed by the evidence presented and the apparent time and services rendered by plaintiff's counsel as a basis for making a reasonable award of fees (*Moore v. Moore* (1977), 53 Ill. App. 3d 228, 368 N.E.2d 545. Any

deficiencies in the evidence relating to the award are resolved in favor of the award. *Needler v. Needler* (1971), 131 Ill. App. 2d 11, 268 N.E.2d 517.

■■ In his brief the defendant makes no references to evidence relevant either to the award of fees or its amount but simply asserts that defendant's and plaintiff's income "are roughly the same." This fact, standing alone, does not render the award of attorney's fees to plaintiff's counsel improper. (*Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680.) From our own examination of the record we find that the award of fees by the trial judge was warranted and did not involve an abuse of discretion.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.