In re MARRIAGE OF ROBERT W. SCOTT, Petitioner and Counterrespondent-Appellee, and RUBY JANE SCOTT, Respondent and Counterpetitioner-Appellant.

Second District   No. 79-691

Opinion filed July 7, 1980.

Leonard J. Seraphin, Howard W. Broecker, and Alan D. Hoffenberg, all of Ehrlich, Bundesen, Broecker, Hoffenberg & Seraphin, of Geneva, for appellant.

Peter M. Donat and Walter J. Donat, both of Donat & Donat, of Batavia, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This action was commenced by Robert W. Scott in July 1977 by his filing of a complaint for divorce. Ruby Jane Scott filed a counterpetition for legal separation and subsequently filed an amended counterpetition for dissolution of marriage, or in the alternative, for legal separation, in March of 1978. After an uncontested hearing on the grounds a trial was had on the balance of the issues. Robert and Jane each appeal from the judgment of the court with respect to the issues of property distribution, maintenance and support, and attorneys' fees. There is no issue as to the judgment of dissolution of marriage.

Robert and Jane were married on November 1, 1952. The one child born as a result of their marriage is now emancipated. Robert is 52 years old and is self employed in a business known as Scott's Art Shop in Batavia, Illinois. Jane is 49 years old and is unemployed, as she was during the course of the marriage (except for a brief period of employment in 1952). The parties possess substantial assets with a total value of over $1 million, including real estate, securities, stamp and coin collections, and various other valuable properties. The trial court awarded Robert a total of approximately $858,972 in marital and nonmarital assets, and awarded Jane approximately $273,800 in marital and nonmarital assets. The court also awarded Jane periodic maintenance of $1200 per month and ordered Robert to pay $8984 of a total of $14,375 in attorneys' fees to Jane's attorneys.

On appeal, the parties essentially disagree on five points: (1) the classification of certain assets as marital or nonmarital property; (2) the classification as marital or nonmarital of the increase in value of nonmarital property acquired after the marriage; (3) the distribution of marital property; (4) the award and amount of maintenance; and (5) the award and amount of attorneys' fees.

The disposition of property upon dissolution of marriage is governed

by section 503 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503). Subparagraphs (a) and (b) of the statute call for classification of property held by the parties as follows:

"(a) For purposes of this Act, "marital property" means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property';

(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) the increase in value of property acquired before the marriage; and

(6) property acquired before the marriage.

(b) All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section."

The trial court found the following property to be the parties' nonmarital property: Jane—securities with a value of $21,000, received as an inheritance; Robert—$322,400 worth of securities and cash, received as an inheritance; certain securities and real property traced to nonmarital sources of funds; certain coins acquired before the marriage; certain stamps acquired before the marriage; certain property located in Aurora; and landscaping equipment worth $8,000. The parties do not dispute the classification of the inheritances as nonmarital property under section 503(a)(1). The parties do disagree as to the sufficiency of the tracing of funds which purchased certain real estate and stocks to Robert's nonmarital funds, and the commingling of nonmarital with marital funds. Jane contends that the court erred in finding that Robert sufficiently traced the purchase of the real estate and certain stock (Dr. Pepper, Pepsi, Eastern Airlines, Mass. Mutual, Fruehauf, International Investors, and Chromalloy) to his nonmarital funds, and that the court erred in classifying such stock as Robert's nonmarital property. Robert maintains that the trial court was correct in most of its classification of property, but

contends that some property was erroneously classified as marital property.

■■■ The tracing of funds is a procedure which allows the court to find that property which would otherwise fall within the definition of marital property is actually nonmarital property under one of the statutory exceptions. A party claiming that property is nonmarital by virtue of section 503(a)(1) through (6) has the burden of proof. (*In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859.) From our review of the record, it appears that the documents and testimony presented by Robert support the trial court's finding that Robert sufficiently overcame the presumption of marital property by tracing the funds used to purchase the disputed real estate and stocks to nonmarital sources. Although Jane contended that the funds were withdrawn from jointly held accounts, she presented no affirmative evidence of such withdrawals to the court. Under section 503(b), even if property is acquired during the marriage, it may properly be characterized as nonmarital property if it is shown to be property "acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent." (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(2).) We therefore conclude that the trial court's finding as to this real estate and stock is neither against the manifest weight of the evidence nor contrary to the statute.

Prior to the marriage, Robert owned certain stock in Lyon Metal, Chemical Fund, and American Telephone and Telegraph. Some additional shares of these stocks and stock in First American Bank of Aurora, Merchants National Bank, and Texaco were inherited by Robert during the marriage. The remaining shares now held in Robert's name were the result of stock splits. The trial court found that all these shares, including those acquired through stock splits, were Robert's nonmarital property.

The shares owned prior to the marriage, or received as an inheritance during the marriage, are undeniably Robert's nonmarital property under section 503(a)(6) or 503(a)(1). Jane contends, however, that the remainder of the shares were "acquired" during the marriage and are thus presumed to be marital property under section 503(b). It would appear that if the shares received through stock splits were "acquired" during the marriage, at least some of those shares would not technically fit into any of the categories in section 503(a), which categorization would overcome the presumption of marital property. The statute does state that the "increase in value of property acquired before the marriage" is nonmarital property. (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(5).) Thus, if shares acquired through stock splits were to be considered an "increase in

value" of the original stock, those shares acquired through splits of stock owned by Robert before marriage would be nonmarital by virtue of section 503(a)(5). However, stock splits do not actually increase the value of an ownership interest, but merely increase the number of shares held. Thus, if stock acquired through stock splits is considered to be technically the same property as the shares held before the split, all the new shares would clearly retain the same character as the originals. Either analysis clearly results in the characterization of much of Robert's stock as nonmarital, except for shares acquired through splits of stock acquired by Robert during the marriage as an inheritance.

The trial court specifically found that the "appreciation or increase in value of nonmarital property acquired after the marriage is marital property." The trial court thus apparently found that stock splits do not constitute an increase in value; the stock resulting from splits of nonmarital shares acquired during the marriage was found to be Robert's nonmarital property. However, if property does increase in value, or produces income, the increase or income would be marital property. Therefore, the court found that $72,500 worth of appreciation on stocks acquired during the marriage was marital property. Robert now contends that the appreciation was his nonmarital property, arguing that nonmarital property does not change its character as such merely because it increases in value.

In *In re Marriage of Komnick* (1979), 78 Ill. App. 3d 599, 397 N.E.2d 886, the Fourth District recently faced the precise question at issue here. That court acknowledged that the presumption of marital property in section 503(b) can be overcome in six ways, as set out in subsection (a). However, the court found that those six ways do not apply to the increase in value of property inherited by one spouse during the marriage. The court reasoned that the expression of one thing in a statute indicates the exclusion of another, and that, therefore, the provision in the statute that an increase in value of nonmarital property acquired *before* the marriage was to be nonmarital indicated that an increase in value of nonmarital property acquired *during* the marriage would be marital property. The court pointed out that the increase in value in that case, as here, was due totally to economic factors or other external factors and not to any improvements by the parties. Robert has referred to cases from other jurisdictions which may indicate the opposite result; however, those decisions were based on statutes not identical to that of Illinois. We agree with the *Komnick* court's reasoning and find that any appreciation in the value of stock inherited by Robert during marriage is marital property. ■■■ Accordingly, we conclude that the trial court's determinations regarding the characterization of stock were correct, with one minor exception. The court assigned 150 shares of Chromalloy stock to Robert

as his nonmarital property; from the record it appears that only 100 of those shares should have been assigned as nonmarital, the other 50 being marital property. We specifically find that: (1) stock owned by Robert before marriage was nonmarital, by virtue of section 503(a)(6), and the appreciation on that stock was nonmarital, by virtue of section 503(a)(4); (2) stock inherited by Robert during the marriage was nonmarital, by virtue of section 503(a)(1), but the appreciation on that stock is marital property, by virtue of the *Komnick* reasoning; and (3) all stock acquired through splits of Robert's nonmarital stock is also his nonmarital property, as the new shares do not constitute an increase in value, but are merely a redefinition of the same ownership interest. (It should be noted however, that all appreciation on this stock is *marital* property, as is the case with stock described in (2) above.)

Both parties contend that the trial court erred in the distribution of marital assets. Under the Illinois Act, the court is to divide marital property "without regard to marital misconduct in just proportion, considering all relevant factors," some of which are listed in the statute. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) In this case, the most relevant factors appear to be: (1) Jane's contribution as a homemaker, and Robert's contribution as wage earner; (2) Robert's receipt of more nonmarital property than Jane; (3) the 25-year duration of the marriage; (4) the absence of dependent children; (5) the ages of the parties (Jane-49, Robert-52); (6) the award of maintenance to Jane; and (7) Jane's apparent inability to find "appropriate" employment. The trial court classified and distributed the marital property as follows: to Jane—the marital residence ($100,000 value) and adjacent lot ($25,000 value); stocks held in her name ($66,700 value); Florida lots ($18,100 value); $10,000 in cash; municipal bonds ($28,100 value); life insurance ($23,000 value). To Robert—coins acquired during marriage ($86,000 value); stamps acquired during marriage ($3500 value); appreciation on coins and stamps; appreciation on all marital and nonmarital stocks held in his name; accounts receivable ($5000 value); Scott's Art Shop ($30,000); $6,000 cash.

■■ Both parties dispute the trial court's division of the municipal bonds, the coin and stamp collection, and the marital residence. From our examination of the record, it appears that neither party was able to overcome the presumption of section 503(b) that the municipal bonds, acquired by the parties during the marriage, were marital property. Therefore, we find that the determination that the bonds were marital property and their approximately equal division between the parties was not against the manifest weight of the evidence. Further, we find that the trial court's decisions regarding which coins and stamps were marital and which were nonmarital, and the decision to award the entire stamp and coin collections to Robert, were equitable under the circumstances.

However, the record does support Robert's contention that the value of the coins at the time of the marriage was $42,000, and not $30,000 as determined by the trial court. As the total value of the coins at the time of trial was $104,000, the value of the coins awarded to Robert as marital property should have been only $62,000. However, we see no need to adjust the trial court's disposition of marital property. As previously mentioned, there was a slight error in the court's award regarding 50 shares of Chromalloy stock, which should have been categorized as marital property. As the values of that stock and these marital coins are approximately the same, the court's distribution of marital property need not be disturbed on their account.

The trial court found the marital residence to be marital property and awarded the home to Jane. Robert, however, contends that he should receive a refund of $12,000, as it was conceded that Robert sold $12,000 worth of nonmarital coins to pay for the parties' first home. The funds from the sale of that home can then be traced to the purchase of the present marital home.

■ Robert cites *In re Marriage of Key* (1979), 71 Ill. App. 3d 722, 389 N.E.2d 963, for the proposition that when identifiable nonmarital assets, cash or tangible property, have been exchanged for jointly held property, the parties are entitled to a refund of their original contributions under section 503(a). The Illinois courts adhering to this principle have reasoned that section 503(a)(2) destroys any presumption that a transfer of nonmarital property into a marital asset is a gift to the other spouse. However, it appears that those cases may be distinguishable, at least on the basis that any presumption of gift may be rebutted by other factors, for example, the short duration of a marriage. In one case, this court did give the wife a refund for her contribution of nonmarital funds toward the purchase of a house. The court found that such refund was proper in view of the short marriage (2 months). (*In re Marriage of Pederson* (1979), 77 Ill. App. 3d 716, 396 N.E.2d 659.) In *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018, this court noted that the appellate courts have split on this question, with the Fourth and Fifth Districts following *Key* and *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762, while the First and Second Districts find that commingling of nonmarital funds with marital funds or assets evidences an intent to treat the funds as marital property. We concluded in that case that we would follow *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517, and *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859, and found that such commingled funds are marital property, the contribution of the spouses being taken into account in dividing the marital property. We now reaffirm our decision in *Amato* and find that the full value of the marital home, $100,000, is marital property,

and that Robert is not entitled to any refund. We further find that the award of the marital home to Jane is appropriate in light of the disposition of other marital and nonmarital property. Robert contends that Jane has no need for the home and that it should be sold. The statute requires the court to consider the "value of the property set aside to each spouse." (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(2).) Therefore, the relatively greater value of nonmarital assets assigned to Robert is relevant to the division of marital property. By virtue of Robert's employment situation and substantial assets, his opportunity for future acquisition of capital assets and income appears greater than that of Jane. Under these circumstances we conclude that the trial court acted within its discretion in awarding the marital home to Jane. See *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831.

The trial court awarded Jane $1200 per month as periodic maintenance. Robert contends that she should receive no maintenance, whereas Jane argues that, unless she receives a greater share of marital assets, the $1200 per month is insufficient.

Maintenance awards are governed by section 504 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504), which provides in pertinent part that the court may grant maintenance to either spouse, "only if it finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and (2) is unable to support himself through appropriate employment * * *, or (3) is otherwise without sufficient income." The court is to consider various factors, which in this case include the relative financial resources of Jane and Robert (including marital and nonmarital property awarded to them); the relatively high standard of living established during the marriage; the 25-year duration of the marriage; the age and health of both parties; and the ability of Robert to pay.

■■ From the record it appears that the court did consider all relevant factors properly with regard to Jane's "reasonable needs," especially noting the relative amounts of property awarded to the parties, the standard of living during the marriage, the amount of interest Jane could realize without liquidating all her assets, and Robert's obvious ability to pay. Where a marriage has been of fairly long duration, and where the wife is 49 years of age and has no real prospect of finding "appropriate" employment, and where the record reveals that the court considered the relevant factors in detail, the award of $1200 per month as maintenance is not against the manifest weight of the evidence or contrary to the statute.

The final point of contention between these parties is the amount of attorneys' fees awarded to Jane's attorneys, and the court's decision as to who should bear the cost of those fees.

■■ The appropriate amount of attorneys' fees to be awarded by a court depends on the facts and circumstances of each case and is within the trial court's discretion. The award should not be reversed unless that discretion was clearly abused. (*Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288.) In *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661, the court set out factors to be considered in determining the reasonableness of attorneys' fees: (1) the relative financial position of the parties; (2) the nature of the controversy; (3) the complexity of the questions at issue; (4) the significance or importance of the subject matter; (5) the degree of responsibility involved; (6) the skill of the person involved; and (7) the time and labor involved. In *Green*, the appellate court reduced the amount of attorneys' fees from $50,000 to $27,500. The rate as originally awarded was $127.50 per hour, which the court deemed excessive. By our calculations, the amount awarded by the trial court in this case averages approximately $66 or $67 per hour. The court reviewed the varying qualifications and responsibilities of each of the attorneys involved and commented on the high quality and comprehensive nature of the work done in this case. Considering the complexity of the case as evidenced by the record and the court's comments, we cannot say that the trial court abused its discretion.

■■ Section 508 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508) provides that the court may order either party to pay attorneys' fees incurred by the other spouse. Robert argues that a wife ordinarily has responsibility for her own attorneys' fees (*Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 375 N.E.2d 961) and that Jane is not financially unable to pay. He contends that Jane must pay her own fees unless she would be "stripped" of her own support by having to pay them. However, financial inability to pay does not necessarily mean that the party would be destitute as a result of paying his own fees. (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.) Inability to pay in these circumstances implies a *relative* inability to pay; that is, financial inability exists when a disbursement of the party's available funds would undermine that person's economic stability. (*Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288.) The court in this case specifically considered the relative economic situations of the parties, saying that if Jane were required to pay all fees the court would effectively be taking away what it had already given her as her share of marital property, noting that she had few assets of her own.

It thus appears that the court did consider the appropriate factors in requiring the parties to pay their respective portions of fees. Considering the complex legal issues, the extensive assets, and the relative financial abilities of the parties, the court's decision is equitable; neither party will be severely burdened by payment of his proportionate share. The trial

court acted within its discretion in the amount and the division of attorneys' fees.

For the reasons stated above, the judgment of the trial court with respect to property distribution, maintenance and support, and attorneys' fees is affirmed.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.