DOMINIQUE BRONGEL, Plaintiff-Appellant, *v.* JOHN A. BRONGEL, Defendant-Appellee.

Second District (1st Division)   No. 75-48

Opinion filed April 25, 1977.

Dom J. Rizzi and Michael Rathsack, both of Rizzi & Rathsack, of Chicago, for appellant.

Ralph Dichtl, of Wheaton, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This appeal is taken from an order entered in the contested divorce action. The only question on review is whether the trial court properly distributed the marital estate.

The parties were married in November 1966 and the plaintiff filed suit for divorce in June 1973. Pursuant to a stipulation between the parties, the trial court heard evidence on the issue of divorce only and on April 23, 1974, entered a decree of divorce in favor of the plaintiff. Subsequently, evidence was taken in regard to the distribution of the marital estate and on December 24, 1974, the trial court entered a decree which awarded the defendant substantially the entire marital estate. On January 13, 1975, the trial court refused to vacate the decree. The plaintiff appealed from the December 24, 1974, decree and the January 13, 1975, order.

The record reveals that each party entered the marriage with their own personal assets. The defendant had a net worth of approximately $90,000, comprised of a retail jewelry store valued at approximately $80,000 and $10,000 worth of miscellaneous assets. The plaintiff owned a furnished home in Hinsdale valued at approximately $19,000. She also entered the marriage with less than $50 in cash. During their marriage the parties accumulated various other assets, part of which title was held in joint

tenancy and the other part title was held by a California corporation. In 1967 the parties purchased a home in Clarendon Hills, Illinois, and title was placed in joint tenancy. The plaintiff testified that the purchase money for this property was taken from the joint savings account of the parties. Sometime in 1967-68 the parties made a down payment on a date ranch in California with money from the profits of the jewelry store business. Title to that property was held in the California corporation called Rancho Dominique Enterprises, Inc. This corporation was set up by the defendant. The incorporators were defendant, plaintiff and one of plaintiff's daughters from a prior marriage. The incorporators also were named as the board of directors. Defendant was named president and plaintiff was named secretary and treasurer. It is interesting to note that at no time was the corporation run as a business: no meetings were held, no business was conducted by defendant as president of the corporation and no stock was ever issued. In 1968 plaintiff sold her home in Hinsdale under a contract to a third party for $19,000. Pursuant to the contract terms plaintiff received monthly installment payments of $127.82. Part of these checks were deposited in the checking account of the jewelry store and part of them were cashed by the plaintiff and used for her own personal use. In January 1971 the defendant sold the jewelry store business for a price of $50,000. He received $40,000 in cash and a $10,000 note made payable to both the defendant and the plaintiff. Also in January 1971 the parties sold their home in Clarendon Hills on Harris Street for a price of $27,000. The parties comingled the proceeds from these sales with other monies that the parties had. They purchased a truck which they used to move to California. Upon arriving in California they deposited $22,447.42 in a joint savings account in LaCoachella Valley Savings and Loan Association in Indio, California. Defendant testified that the funds deposited in the joint savings account were from both the sale of the house on Harris Street and the jewelry store business. While in California in 1971 the parties proceeded to purchase approximately $35,000 worth of stocks and bonds held in joint tenancy and a home in LaQuinta, California, with a purchase price of $44,715.03 on which the parties made a down payment of $17,000 and signed a mortgage of $27,715.03. The LaQuinta property was held in joint tenancy. They also purchased a vacant lot in Indio, California, for a purchase price of $25,075 as well as making the final payment on the date ranch. Title to both pieces of property was held in the Rancho Dominique Enterprises, Inc. In October 1971 the date ranch was sold for a purchase price of $90,000. The parties received $15,000 in cash, two notes for $43,281.22 made payable to the corporation and the purchasers assumed the existing mortgages. In April 1972 the parties purchased a mobile home and drove back to Illinois. After living in the mobile home in the driveway of plaintiff's daughter for

a number of weeks, the parties sold the mobile home. They then rented a home on Western Avenue in Clarendon Hills. In May 1973 the parties purchased a home on West 56th Street in Clarendon Hills held in joint tenancy.

At the time that plaintiff filed for divorce in June 1973 the parties owned the following properties in joint tenancy: the home on West 56th Street in Clarendon Hills, the home in LaQuinta, California, with an outstanding mortgage of approximately $26,000 and the stocks and bonds purchased in California in 1971. Title to other property which the parties purchased was held by the Rancho Dominique Enterprises, Inc. The corporation's assets at the time plaintiff filed for divorce consisted of the vacant lot which was purchased for $25,075, the balance due on the two notes from the sale of the date ranch, and a checking account with $19,000 in it. After filing for divorce, the plaintiff withdrew the $19,000 from the corporate checking account and placed it in her own account. The trial court ordered that plaintiff deposit the $19,000 in a joint account that the parties had in a local Illinois bank pending its decision. The parties also owned personal property, including two dogs, the furniture in the LaQuinta home, the furniture in the Clarendon Hills home and several items of jewelry and jewelry equipment.

On March 4, 1974, after the plaintiff had filed suit for divorce but before the trial court entered the decree of divorce, the plaintiff filed for a partition of the marital home on West 56th Street in Clarendon Hills, held in joint tenancy. The trial court entered an order granting the partition and the marital home was sold to the defendant. Plaintiff received $7,000 proceeds from the sale. Plaintiff has not appealed from this order.

The order from which the plaintiff has appealed is that which awarded the defendant title to the corporate assets, the home in LaQuinta, California, the stocks and bonds held in joint tenancy and most of the personal property. That order also granted the defendant a $7,615.16 lien on the plaintiff's property in Hinsdale for money that defendant advanced plaintiff on expenses incurred in paying the existing mortgage, real estate taxes, attorney's fees and other similar bills. The plaintiff was awarded one bedroom suite of furniture from the LaQuinta home and the monthly installment payments on the contract sale of her home in Hinsdale.

■■ On appeal plaintiff's principal contention is that the findings of the trial court are against the manifest weight of the evidence and that the evidence does not support the judgment. Plaintiff's argument is twofold. Initially, plaintiff argues that she established by evidence that she acquired special equities in all of the disputed property and monies pursuant to section 17 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 18). Plaintiff argues that the evidence proved that she made financial contributions, both direct and indirect, to the jewelry store business

beyond the normal services performed by the wife in the marriage. She says that these contributions increased the assets of the business and that it was the proceeds from the sale of the business and the marital home which provided the funds to purchase the disputed property. Plaintiff concludes that since she has clearly maintained the special interest in all of these properties during the duration of the marriage she is entitled to one-half interest in the entire marital estate at issue. Secondly, the plaintiff argues that the evidence clearly shows that part of the property was held in joint tenancy. She notes that in Illinois when husband and wife hold property in joint tenancy a rebuttable presumption arises that the spouse actually furnishing the consideration for the property makes a gift to the other spouse of an undivided one-half interest in that property. The burden of rebutting the presumption is on the party contesting the gift and must be overcome by clear, convincing and unmistake evidence. (*Lawyer v. Lawyer* (1974), 19 Ill. App. 3d 571, 312 N.E.2d 7.) Plaintiff concludes that the defendant failed to overcome the presumption and therefore the trial court erred in not recognizing her undivided one-half interest in the joint tenancy property.

Initially we note that the reviewing court has a duty to reverse the judgment of the trial court when the trial court's findings are contrary to the manifest weight of the evidence. (*Wallace v. Blue Cross Hospital Service, Inc.* (1973), 13 Ill. App. 3d 803, 300 N.E.2d 531.) In order for a reviewing court to reverse it must determine that the opposite conclusion is clearly evident. (*Thomas v. Burkian* (1973), 10 Ill. App. 3d 742, 295 N.E.2d 313.) We shall analyze each of plaintiff's contentions individually to determine if an opposite conclusion is clearly evident.

Plaintiff's first contention is that she alleged and proved her special equities in the marital property giving her an undivided one-half interest in all of the property. Section 18 of the Divorce Act vests the trial court with authority to award interest in the marital property to a spouse where she alleges and proves special equities by way of her financial contributions beyond her marital duties. Financial contributions have been divided into two categories, direct and indirect.

Here the evidence reveals that the plaintiff made no direct financial contribution to the marital property. Plaintiff deposited in the jewelry store's checking account some of the monthly checks which she received from the sale on contract of her Hinsdale property. Plaintiff argues that this was a direct financial contribution to the assets of the parties beyond her marital obligations. In rebuttal defendant testified that the checks that were deposited in the store's account by the plaintiff were merely repayment of advances he made to the plaintiff on expenses incurred on the Hinsdale property which she owned. Based upon that testimony, it is clear plaintiff made no direct financial contribution to the jewelry store.

Plaintiff presented evidence of an indirect financial contribution to the jewelry store which was inclusive of whether or not plaintiff created special equities in the joint tenancy property as well as the corporation's assets. Plaintiff testified that she worked in the store during the marriage as a manager, jeweler and bookkeeper. She testified that she worked long hours, seven days a week without a regular salary. However, the evidence also showed that during her employment at the store she had authority to and did withdraw any monies from the store's funds necessary to meet her daily expenses. Whether that benefit was actually equivalent to a regular salary or more is not clear from the evidence. Similiarly to what extent it was an indirect financial contribution to the store is indeterminable from the evidence.

We therefore hold that the trial court should hold further hearings on this question of whether plaintiff has created special equities in the marital property by indirect financial contribution.

Second, plaintiff argues that since the evidence clearly shows that the parties held certain property in joint tenancy that a rebuttable presumption arose that defendant made a gift of an undivided one-half interest in such property which defendant failed to rebut. (*Lawyer v. Lawyer.*) We agree with the plaintiff's contention.

Defendant points out that whether the presumption of a gift has been rebutted turns on the unique factual settings of each case. Defendant contends that under the factual setting of this case any presumption of gift in the property held in joint tenancy by the parties was rebutted by the evidence of an agreement between them that his property would be placed in joint tenancy solely for purposes of avoiding probate.

The defendant testified that the parties made an agreement pursuant to the drafting of their wills that the defendant would transfer his property into joint tenancy with the plaintiff for the purposes of estate planning. Defendant explained that the agreement provided that in the event of his death plaintiff would receive an undivided one-half interest in his property without having it go through probate. Defendant also testified that by placing title to the property in joint tenancy he could still maintain control over the property. Defendant concluded his testimony about the agreement by explaining that the property was to remain in joint tenancy until the parties established a permanent residency, at which time the defendant would place his property in his own name.

The parties had their wills drafted in January 1968. The alleged agreement which the defendant relies upon was supposed to have been made at that time. We note that the evidence indicates that they had established a pattern of ownership of individual and joint property prior to that time. This pattern was that each party held title to their individual property in their own names and title to their joint property in joint

tenancy. For example, the defendant held title to the jewelry store and his other assets in his own name; plaintiff held title to the Hinsdale property and her checking account in her own name; and, in 1967, the parties purchased a home on Harris Street in Clarendon Hills, Illinois, as joint tenants with money from a joint savings account. Between January 1968 and January 1971 when the jewelry store was sold, the parties continued to follow this pattern. At no time during this period did the defendant transfer title to the jewelry store, his most valuable asset, into joint tenancy with the plaintiff pursuant to the alleged agreement. We find this inaction on the part of the defendant is in direct conflict with the testimony concerning the alleged agreement. Furthermore, when defendant made the down payment on the date ranch he had title placed in the Rancho Dominique Enterprises corporation rather than in joint tenancy. Also, there was no evidence that the parties ever contemplated placing title to any of the joint tenancy property in his name alone as he testified. The couple took no steps to transfer title to the joint tenancy property to defendant at any time despite the fact that they had settled once in California and then again in Illinois. Thus defendant, by his action in placing title to the date ranch in the corporation rather than joint tenancy, and his inaction in not transferring the jewelry store assets into joint tenancy nor subsequently transferring the existing joint tenancy property into his own name, has impeached his own testimony concerning the alleged agreement.

■■  After examining the facts in this case, we find that the defendant has failed to rebut the presumption that the defendant made a gift of an undivided one-half interest in the property held in joint tenancy by the parties. In light of the fact that the home on West 56th Street in Clarendon Hills has been previously partitioned, we hold that, based upon the unrebutted presumption of gift, plaintiff has an undivided one-half interest in the joint tenancy property in LaQuinta, California, and the stocks, bonds and dividends held in joint tenancy. Since we find no evidence that the corporate assets were intended to be held in joint tenancy, or that the plaintiff held any stock in said corporation, we hold that the plaintiff has no interest in the corporation or its assets under this theory.

In light of the disposition of the plaintiff's contention with regard to the joint tenancy property, we find that it is not necessary to discuss plaintiff's contention that the trial court abused its discretion when it refused to reopen the evidence to allow an affidavit by the plaintiff's attorney with regard to the actual transactions in the preparation of the wills.

Lastly plaintiff contends that we should review the distribution of the items of personal property contained in defendant's Exhibits K and M. Plaintiff points out that the record is void of any testimony concerning the

valuation of the items on those lists. She argues that in the absence of such testimony that we should not consider the valuations listed in the exhibits because they are speculative and clearly without foundation.

■■ We agree with the plaintiff that the value of the items listed on defendant's Exhibit K—basically household items and some pieces of jewelry—are speculative and without foundation. Defendant testified that he compiled the list of valuation by various methods such as his private records, catalogs and advertisements. Defendant did not indicate which items were valued by which method. This court finds that the valuations adopted by the trial court on the items listed on Exhibit K is not based upon competent evidence.

Defendant's Exhibit M is a list of negotiable instruments. The value of each instrument is easily determined by looking at the face value thereon. It is not clear to this court that that is what the defendant did in compiling the value of the items listed. Since we are unable to find any competent evidence to support the valuations of the items on either list, it is necessary to reverse that portion of the trial court's order adopting the valuations listed in defendant's Exhibits K and M.

In light of the fact that we are reversing the distribution of the joint tenancy property and the valuation of the items listed in defendant's Exhibits K and M, we find that the trial court should reconsider the distribution of these items of personal property with regard to whether any of them are joint tenancy assets.

In summation, we reverse those portions of the decree which: (a) award the defendant sole ownership of the home in LaQuinta, California, the 1.7 acres of vacant land in Indio, California, the note in the principal sum of $12,000 executed by Wright and Rickert, the joint savings account No. 17213-0 at the Bank of Clarendon Hills, Illinois, and the stocks, bonds and dividends listed in Exhibit I of the decree; (b) award the defendant sole ownership of the personal property items listed in defendant's Exhibits K and M and adopt the defendant's valuations; and (c) deny defendant reimbursement for the expenses he incurred in the maintenance of the house in LaQuinta, California. We instruct the trial court to hold further hearings to determine:

1. Whether or not plaintiff made an indirect financial contribution to defendant's jewelry store creating in her special equities in marital property purchased with the proceeds from the sale of the jewelry store and, if so, what percentage;

2. Whether or not defendant is entitled to be reimbursed for expenses incurred in the maintenance of the LaQuinta home;

3. What is the proper valuation and distribution of the items of personal property listed in defendant's Exhibits K and M.

After taking evidence on the above issues, the trial court should enter an

order awarding each party their appropriate share in the marital property in question and all other necessary orders not inconsistent with this opinion. All other portions of the decree are affirmed.

Affirmed in part, reversed in part and remanded with instructions.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.