*In re* MARRIAGE OF STEPHANIE A. THORNQVIST, Petitioner-Appellee, and INGVAR F. THORNQVIST, JR., Respondent-Appellant.

First District (5th Division)   No. 78-1753

Opinion filed December 14, 1979.

Bernard Hammer, Ltd., of Chicago, for appellant.

James B. O'Brien, of Spagat and O'Brien, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from an order distributing marital property under the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*). After petitioner was granted a default divorce on publication, the decree was opened up and thereafter an agreed order was entered allowing the dissolution of marriage to stand but vacating and setting aside all other portions of the default judgment. After a hearing concerning disposition of property, the trial court entered an order awarding respondent's shares in a co-owned corporation to petitioner. On appeal, respondent contends that (1) the Act is unconstitutional for several reasons; and (2) the trial court erred (a) in denying respondent's initial and renewed motions for temporary relief, (b) in awarding respondent's shares in the co-owned corporation stock to petitioner, (c) in denying maintenance to him, and (d) "in ruling on certain objections to questions on cross-examination."

There existed only 10 shares of the corporation stock and each of the parties owned five of those shares. It appears that prior to the entry of the order awarding respondent's shares to petitioner, he filed a motion for temporary relief requesting funds for transportation from Sweden, where he was then living, to Chicago so that he could participate in the proceedings. He filed a sworn verification, an affidavit, and a memorandum of law in support of the motion but, based upon its 1976 Federal income tax return, the court concluded that the corporation did not have sufficient funds to finance his transportation, and the motion was denied. The motion was renewed during the hearing concerning property rights and was again denied.

Petitioner, the sole witness at trial, testified that at the time of their marriage in May 1972 respondent had no assets but that she owned an automobile, a $15,000 art collection, and stock in Fidelity World Arts Corporation; that she worked at that time as a sales manager, and respondent was employed by her father; that in July 1972, she, her mother, and respondent signed a note for a bank loan in the amount of $7,500 for respondent's father's company; that when his father's company failed, she and respondent formed Thornqvist & Associates, Inc. (the corporation), to which she initially contributed $450 from the sale of her automobile, and the corporation also acquired furniture and merchandise from her father's business. She testified further that in September, 1975, she sold her Fidelity World Arts stock for $3,000 and invested the proceeds in the corporation; that in January 1976, the corporation borrowed $10,000 from a lending institution which was personally guaranteed by her and respondent; that she also borrowed $20,000 in February 1977, which she loaned to the corporation; and that the

corporation was indebted to her for $27,958 but owed respondent nothing.

The court found that petitioner was entitled to all of the shares of stock because of the contributions she made to the corporation. It directed respondent to transfer his shares to her, and she was ordered to indemnify respondent for any indebtedness that they jointly incurred as guarantors for the corporation.

OPINION

■■ Respondent initially asserts that the Act is unconstitutional for multiple reasons. However, in *Thompson v. Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17, we considered some of these same reasons and found that they were without merit. He first argues that the Act violates article IV, section 8(d) of the 1970 Illinois Constitution because it encompasses more than one subject; namely, that it includes both marriage and divorce, which have always been treated as separate subjects of law; that the custody provisions may be applied whether or not a marriage is involved; and that the Act purports to deal with child support after the death of a parent, which is covered by the Probate Act. However, in rejecting this argument we adopt our reasoning in *Thompson*, where it was stated:

"The Illinois Marriage and Dissolution of Marriage Act was enacted to create a uniform law governing domestic relations. The provisions questioned by respondent merely define the nature and scope of the Act's operation and relate to the firm establishment and maintenance of a comprehensive system regulating this single subject. All the provisions are germane to domestic relations and are reasonably necessary to accomplish the legislative purpose. We find no violation of the single-subject requirement of the 1970 Illinois Constitution." 79 Ill. App. 3d 310, 313.

Furthermore, section 8(d) of article IV of the Illinois Constitution of 1970 makes possible the combining of a number of statutory items into one bill where the purpose is (1) codification; (2) revision; or (3) rearrangement of laws. This appears to be exactly the objective accomplished by the Marriage and Dissolution of Marriage Act.

Respondent also contends that section 503(c) violates the doctrines of separation of powers and due process. He argues that this section is so vague and indefinite that (1) the courts would be required "to complete an incomplete statute" and, to that extent, it was an unconstitutional delegation of legislative power; and (2) it violates the due process requirement of definiteness.

A statute may be unconstitutionally vague when its meaning depends on the whims of the trier of fact rather than upon objective criteria or

facts (*People v. Belcastro* (1934), 356 Ill. 144, 190 N.E. 301); but, as stated in *Tometz v. Board of Education* (1968), 39 Ill. 2d 593, 604, 237 N.E.2d 498, 504:

> "A statute need not always define each of its terms and detail each of its procedures. 'It is only where the legislative act is so indefinite and uncertain that courts are unable to determine what the legislature intended, or when the act is so incomplete or inconsistent that it cannot be executed, that the law will be invalidated by reason of indefiniteness or uncertainty.' [Citations.]"

Further, in determination of whether a statute is unconstitutionally indefinite, a consideration of the legislative objective and purposes is required. *People v. Schwartz* (1976), 64 Ill. 2d 275, 356 N.E.2d 8, *cert. denied* (1977), 429 U.S. 1098, 51 L. Ed. 2d 545, 97 S. Ct. 1116.

Section 503(c), after stating that all marital property is to be divided "in just proportions considering all relevant factors," lists 10 such factors. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) Defendant argues that the use of the term "relevant factors" is vague and indefinite and that the 10 listed factors are evidentiary in nature and not objective standards, so that "[e]ach judge can and will dispense his or her own brand of 'just proportions', without any stable or fixed rule of law * * *."

■■ In *Thompson*, however, in considering this same argument, we said:

> "The purpose of section 503(c) is to divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including those set forth in the section, in order to promote the amicable settlement of disputes between the parties to a marriage and mitigate the potential harm to the spouses and children caused by the process of legal dissolution of marriage. Respondent claims that 'just proportions' and 'all relevant factors' are not further defined. We do not believe they need be. (See *Fournier v. Fournier* (Me. 1977), 376 A.2d 100.) The factors articulated in section 503(c) are not exclusive, but are general, objective criteria for the express purpose of arriving at a just distribution of marital property. Such a just distribution will necessarily vary depending upon the particular facts and circumstances of each case." (79 Ill. App. 3d 310, 314-15.)

In accepting this reasoning, we conclude that there is no merit to defendant's contention that the doctrines of separation of powers and due process were violated.

■■ Respondent additionally maintains that the Act violates the equal protection clauses of the United States and Illinois Constitutions in that it treats married persons differently than unmarried persons. He asserts that it permits the court to consider a married litigant's expectation of acquiring future capital assets and income in making its determination

(Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(10)), while no law governing the property rights of unmarried individuals allows the court to take this factor into account. Concerning equal protection standards, our supreme court, in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578, 376 N.E.2d 1382, 1389, said:

> "The legislature may differentiate between persons similarly situated as long as the classification bears a reasonable relationship to a legitimate legislative purpose. [Citations.] Any statute reviewed under this standard is presumed to be constitutional despite the fact that, in practice, it may result in some inequality. [Citation.] The burden rests upon the person challenging the statute to negate the existence of any facts which may reasonably be conceived to sustain it. [Citation.]"

Applying these standards, the court in *Thompson* saw no merit in the same equal protection argument made by respondent here, stating:

> "We believe a consideration of factors such as the future earning potential of the persons involved and their ability to acquire capital assets is reasonably related to a legitimate objective. A dissolution of marriage, by its nature, has a major economic and social impact upon the parties. The legislature has recognized both the short term and long range effects of such dissolution on the parties, and has expressly provided the means and methods to mitigate the potential harm to the spouses and children caused by the process of dissolution of marriage, and to make reasonable provision for the spouses and minor children during and after litigation. (Ill. Rev. Stat. 1977, ch. 40, par. 102.) Respondent has failed to show how a classification based upon marital status improperly discriminates against persons whose marriage has been dissolved or that the classification bears no rational relationship to an articulated legislative purpose. Accordingly, we find no violation of equal protection." (79 Ill. App. 3d 310, 315.)

We again accept this reasoning and reject plaintiff's contention that there was a violation of his equal protection rights.

We turn then to respondent's final constitutional argument that the retroactive application of the Act (specifically section 503) is an impairment of vested property rights and a violation of due process. He recognizes that *Kujawinski* held the Act has retroactive application, but he contends that this holding is not controlling here because certain of his arguments against retroactivity were not considered there. We disagree. It was stated in *Kujawinski*:

> "As earlier noted, section 503 does not directly divest or transfer property. It does not affect plaintiff's property in any way during the marriage. It merely classifies as 'marital property' that which

becomes subject to distribution upon termination of the marriage. This is a critical qualification because, even under the preexisting law, as regards his spouse, plaintiff did not have an absolute right to his property upon termination of his marriage. * * * Plaintiff had no reasonable expectation, under the preexisting law, that his property was immune from transfer to his spouse upon termination of the marriage.

* * *

Had the legislature chosen to apply the concept of equitable distribution of property only to property acquired after the Act became effective, the full impact and purposes of the new act would not have been felt for at least a generation. [Citation.] Such prospective application would continue the very inequity which the legislature sought to remedy and would place the present generation of married couples at a decided disadvantage in comparison with subsequent generations of married couples. Moreover, in each dissolution proceeding involving property, courts would be presented with the impracticable dilemma of applying, depending upon the acquisition date of any disputed property, differing sets of laws and policies.

On balance, we conclude that the State interest to be promoted by applying the section retrospectively greatly outweighs the asserted property interest, which is only slightly more impaired by such application." (71 Ill. 2d 563, 575-77, 376 N.E.2d 1382, 1387-88.)

Upon this reasoning, we consider *Kujawinski* to be dispositive. Accord, *Thompson*.

Next, respondent maintains the court erred in the denials of his motion for temporary relief and the subsequent renewal thereof. He sought, *inter alia*, an order pursuant to section 501 of the Act directing petitioner to "provide sufficient mileage allowance, plane fare, and temporary support, so that he may appear and attend his deposition and prosecute his property rights" against petitioner at trial.

The trial court may provide temporary relief in dissolution of marriage proceedings (Ill. Rev. Stat. 1977, ch. 40, par. 501), and the burden is upon the appellant to prove that the trial court abused its discretion in denying such temporary relief. See *Bicek v. Quitter* (1976), 38 Ill. App. 3d 1027, 350 N.E.2d 125; *Daum v. Daum* (1973), 11 Ill. App. 3d 245, 296 N.E.2d 614.

Respondent's motion for temporary relief was supported by the corporation's 1976 Federal income tax return, which shows an operating loss in 1976, and his affidavit which, in pertinent part, stated (1) that he earns between $88 and $93 net income per week in Lyckeby, Sweden;

(2) that he "is without sufficient means to appear in person for deposition or trial in Chicago, Illinois, for a period 21 days prior to trial and at least 14 days for deposition and trial; that this period of time is required to allow sufficient time to meet with counsel and prepare for trial, for discovery, and for trial"; (3) that petitioner "is in possession and control of sufficient means and assets to supply the necessaries of plane fare, lodging, food and suit costs of respondent regarding deposition and trial herein"; (4) that petitioner periodically sent funds to respondent in Sweden for his sustenance and support, while she retained the earnings of the business; and (5) that "this respondent is still willing to appear for deposition, but is prevented from so doing because he has no funds so to do."

■ We initially note our belief that the affidavit alone was insufficient to show an inability to pay his own travel expenses to Chicago. He makes a specific statement as to his weekly net income, but otherwise states only conclusions that he was without sufficient funds to appear. No information is provided concerning the amount needed for his trip nor is any reason given why it could not be accumulated from his weekly income. He merely points out that the corporation tax return shows an inventory of $23,000 and debts owing the stockholders in the amount of $27,958. He argues that if anything of value in the corporation belonged to him as a stockholder, he should have received a portion of it to cover his travel expenses and, conversely, if whatever was of value belonged to petitioner, that she should have been ordered to pay for those expenses. The uncontradicted testimony of petitioner, however, is that the corporation owed him nothing and because, as stated above, his affidavit is lacking in anything factual to substantiate his inability to pay his own expenses, we find that the trial court did not abuse its discretion in denying his request therefor.

Respondent also contends that the court's decision to divest him of his stock in the corporation was "inequitable, an abuse of discretion, against the manifest weight of the evidence, and a deprivation of property without due process of law." We disagree.

A trial court's order to distribute property, like an order granting temporary relief under the Act, is discretionary (*In re Marriage of Marsh* (1978), 64 Ill. App. 3d 572, 381 N.E.2d 804) and, likewise, it will not be disturbed except for a clear abuse thereof (*In re Marriage of Marsh* (1978), 64 Ill. App. 3d 572, 381 N.E.2d 804; see also 16A Ill. L. & Prac. *Divorce* §222 (1971).)

Respondent argues that the record does not show that petitioner made any contribution to the corporation; that he offered to testify concerning the loan of funds to the corporation; and that petitioner converted corporate assets to her own use. He maintains that the court abused its discretion (1) in failing to leave the parties as it found them;

and (2) in failing to order liquidation or sale of the corporation with a division of the proceeds in accordance with the contributions made by the parties.

■ We note, however, the testimony of petitioner that she contributed $450 from the sale of her automobile to the corporation in November 1973; that she sold her Fidelity World stock for $3,000 in December 1975 and invested the proceeds in the corporation; and that she personally borrowed $20,000, which she loaned to the corporation. Our search of the record reveals only one indication that respondent made any contribution to the corporation. This appears in his affidavit filed in connection with his motion for temporary relief, wherein he states "all of respondent's life's savings were contributed to this business corporation—some $20,000 of merchandise and assets, more or less." This general conclusion, however, is factually unsupported in his affidavit or elsewhere in the record, and it was the uncontradicted testimony of petitioner that the corporation owed nothing to respondent. In the light thereof, we see no abuse of discretion in awarding petitioner the five corporate shares of respondent.

We turn now to respondent's contention that the court erred in denying him maintenance. Section 504(a) of the Act states:

> "In a proceeding for dissolution of marriage or legal separation or declaration of invalidity of marriage, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:
>
> (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and
>
> (2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or
>
> (3) is otherwise without sufficient income." Ill. Rev. Stat. 1977, ch. 40, par. 504.

■■ Respondent argues that he has no funds other than his interest in the corporation and that, therefore, he is entitled to maintenance. We note, however, his net earnings of $88 to $93 per week and the fact, as pointed out above, that there is nothing factual in his affidavit or elsewhere in the record to establish, as required in section 504, that he lacked sufficient assets or property to provide for his reasonable needs or that he is unable to support himself through appropriate employment or is otherwise without sufficient income. We conclude, therefore, that the court did not abuse its discretion in the denial of maintenance to respondent.

The final point raised by respondent in his brief is that the court

"erred in ruling on certain objections to questions on cross-examination." He does not, however, argue this point in his briefs. Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7)) provides, in pertinent part, that "[p]oints not argued [in appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (See also *Collins v. Westlake Community Hospital* (1974), 57 Ill. 2d 388, 312 N.E.2d 614; 2 Ill. L. & Prac. *Appeal and Error* §557 (1953).) By his failure to argue this point, respondent has waived it.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.