*In re* MARRIAGE OF IONA SMITH, Petitioner-Appellant, and GAINES N. SMITH, Respondent-Appellee.

Fifth District    No. 79-303

Opinion filed October 15, 1980.—Rehearing denied November 12, 1980.

HARRISON, J., concurring in part and dissenting in part.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellant.

Pessin, Baird & Wells, of Belleville (Sam S. Pessin, of counsel), for appellee.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Iona Smith, appeals from the April 25, 1979, order of the St. Clair County Circuit Court with respect to the assignment and division of property and the denial of petitioner's prayer for the award of maintenance and attorney fees in a proceeding for dissolution of marriage.

The parties, Iona Smith and Gaines N. Smith, were married October 13, 1956. One child, Gaines B. Smith, was born of the marriage. The parties separated on September 8, 1977, and a decree of dissolution of marriage was entered October 12, 1978. Subsequently, a hearing was held on October 26, 27, and 30, 1978; and the trial court entered its order on January 3, 1979, relative to all issues other than the dissolution of marriage. Petitioner filed a post-trial motion, and a hearing was held on it on February 22, 1979. The trial court entered an amended judgment on April 25, 1979, correcting certain omissions in the original order. It is from this order that petitioner appeals.

During the marriage, respondent was engaged in the sale of insurance and mutual funds. He suffered a heart attack in November 1977, and since that time has been forced to limit his work. Petitioner is currently residing in Indianapolis, where she is employed as an executive secretary. Since 1974, petitioner has held various secretarial positions. Petitioner had two children, William and Candace Koriath, by a previous marriage. William resides in Indianapolis, and her daughter, Candace, was killed in an automobile collision in 1972. As a result of that collision, petitioner received approximately $17,000 in insurance proceeds, which were subsequently either placed in bank accounts or invested in stocks.

The evidence adduced at the hearing disclosed that the parties had acquired various parcels of real estate and various stocks and bank accounts during the marriage. On appeal petitioner raises numerous assignments of error relating to the assignment and division of the parties' real property, stocks, bank accounts, pickup truck, and pension plans. She also urges that the trial court erred in denying her request for maintenance and attorney fees.

With respect to the disposition of the parties' real property, petitioner contends (1) that the court erred in fixing the value of the marital home at $41,420 and ordering petitioner to convey her interest in such home to

respondent in exchange for one-half that value to be paid by him; (2) that the trial court incorrectly considered 46.89% of a 200-acre tract of land in Washington County to be respondent's nonmarital property; (3) that the trial court erred in awarding respondent an interest in certain property in Indianapolis, Indiana; (4) that the court erred in finding that a combination office and apartment designated as 117 W. Washington St., Belleville, Illinois, was respondent's nonmarital property.

The marital home at 421 Missouri Avenue, Belleville, Illinois, was purchased in 1959. Respondent testified that its current value was between $46,000 and $48,000. Petitioner in her testimony estimated the value to be $70,000. In its order the court found the value of the home to be $41,420, found it to be marital property, and awarded it to respondent. The trial court ordered petitioner to convey her interest in the home to respondent, and respondent was ordered to pay her $20,710 for such interest. Petitioner asserts that the trial court erred in finding the value of the home to be $41,420 and in not ordering it to be sold and the proceeds divided rather than ordering her to convey her interest to respondent.

■■ We find no error in ordering petitioner to convey her interest in the marital residence to respondent. The distribution of marital property is within the discretion of the trial court, and it will not be disturbed except for a clear abuse of discretion. (*In re Marriage of Thornqvist* (1979), 79 Ill. App. 3d 791, 399 N.E.2d 176; *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.) In the case at bar respondent planned on remaining in the Belleville area while petitioner had moved to Indianapolis. The parties' son was also still in Illinois attending college. Based on these considerations it was reasonable for the court to permit respondent to retain the marital home and to require petitioner to convey her interest to respondent in return for her being compensated for one-half of the value of the property rather than to require the property to be sold and the proceeds divided. However, there is no evidence in the record to substantiate the court's finding the value of the house to be $41,420. Respondent, who is also a licensed real estate broker, estimated the value to be between $46,000 and $48,000, while petitioner testified that the value was $70,000. The court in *In re Marriage of Evans* (1980), 85 Ill. App. 3d 260, 406 N.E.2d 916, refused to disturb the trial court's finding as to the value of the home of the parties where it was within the range of value presented at trial; however, in the case at bar the trial court fixed the value at a figure almost $5,000 lower than the lowest estimation of its value. Therefore, this cause must be remanded for the trial court to establish the value of the home on the evidence introduced at trial.

The parties owned in joint tenancy a 200-acre tract of land in Washington County, Illinois. The property was acquired by the parties in 1965 for $12,900. Respondent testified that $2,036.89 of the down pay-

ment was made from his nonmarital funds. He stated that $1,000 of the down payment was a gift from his mother and $1,036.89 was from the proceeds of the sale in 1965 of property on Bel Air Drive that the parties owned in joint tenancy. Respondent testified that $1,036.89 of the funds used to purchase the Bel Air Drive property in 1957 also had been a gift from his mother. Respondent further testified that $3,670.15 of his inheritance from his mother was used to make mortgage payments on the property. Respondent estimated the value of the land to be $72,500, while petitioner valued it at $200,000.

The trial court ordered the 200 acres in Washington County to be sold and ordered respondent to be paid 46.89 percent of the proceeds of sale of the property as his nonmarital property. The court found that the respondent's payments on the original purchase price and his payments on the mortgage from his own funds represented 46.89 percent of the purchase price of $12,900 and that he consequently is entitled to 46.89 percent of the sale proceeds. The trial court further ordered that the remaining 53.11 percent of the proceeds of sale of the property was marital property to be divided equally between the parties.

Petitioner contends that the trial court improperly awarded respondent 46.89 percent of the proceeds of sale of the 200-acre farm as his nonmarital property. We agree.

■■ Respondent is entitled to a refund of the amount of identifiable nonmarital funds he paid towards the acquisition of the 200 acres in Washington County. (*In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332; *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762.) However, he is not entitled to a percentage of the proceeds of sale of the property based on the investment of his own funds in the original purchase. Such a method of computing his interest would result in his receiving the appreciation in the value of his nonmarital property which was acquired after the marriage. This court has held that appreciation in nonmarital property acquired after the marriage is marital property. (*In re Marriage of Preston; cf. In re Marriage of Komnick* (1979), 78 Ill. App. 3d 599, 397 N.E.2d 886.) Respondent testified to a total investment of $6,045.15 of his nonmarital funds in the Washington County farm. Under the decision of this court in *Preston* and *Dietz*, nonmarital property, including property acquired in exchange for nonmarital property, remains nonmarital and is required to be refunded to the party claiming it so long as the source of the funds can be traced to the newly acquired property without affirmative proof of an intention to make a gift in the acquisition of the replacement property. In the instant case, the evidence also established that respondent contributed $2,375 to the down payment for such farm from monetary gifts made to him by his mother. These are to be considered as nonmarital property under section

503(a)(1) (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1)). (*In re Marriage of Preston; In re Marriage of Dietz.*) Respondent also made mortgage payments on the farm property in the total amount of $3,670.15 with his inheritance, and he is also entitled to a refund of that amount as nonmarital property. (*In re Marriage of Preston; In re Marriage of Dietz.*) Therefore, respondent is entitled to a refund of $6,045.15 from the proceeds of the sale of the Washington County farm, and the remainder is required to be considered as marital property in its division.

Petitioner next contends that the trial court erred in awarding respondent one-half of the net equity of a dwelling located in Indianapolis, Indiana. The record owner of such dwelling is William Koriath, petitioner's son.

Petitioner testified that she rents the dwelling in Indianapolis from her son, William Koriath. She stated that she had supplied her son with $4,000 for the down payment on the house and an additional $4,000 for improvements. These funds were paid from the insurance proceeds she received as a result of her daughter's death. The house was purchased for $18,500 in 1978; and petitioner stated that the house was now worth $35,000. The trial court ordered that petitioner be awarded $6,000 for her nonmarital share of the property. It then ordered that the net equity of $14,500 remaining after deducting a mortgage of $14,500 from the present value of the house be divided equally between the parties as marital property. This division was to be accomplished by adjusting the sums found to be due to the respective parties to compensate each of them for their assigned share of the total assets. Petitioner was credited for the $6,000 award to her as a nonmarital asset and was ordered to pay respondent $7,250, being one-half of the remaining value of the dwelling after deducting the $14,500 mortgage to which it was subject. The court did not order a sale of the dwelling.

■■ The trial court's order relating to the Indianapolis dwelling was in error because William Koriath was the record owner of such property and he was not made party to these proceedings. The sums petitioner loaned to her son to purchase the property were paid from petitioner's nonmarital funds; therefore, respondent has no basis to claim any interest in it, either at law or in equity.

Petitioner further contends that the trial court erred in awarding respondent the real estate at 117 West Washington Street, Belleville, Illinois, as his nonmarital property. She contends that only one-third of this property should have been considered as nonmarital, and the remaining two-thirds should be considered marital.

The property at 117 W. Washington Street consisted of an office and two apartments. Respondent testified that he acquired the property in 1966 as his share of his mother's estate. He testified that he, his brother

and his sister, who were each entitled to receive one-third of the estate, settled the estate of their mother by agreement and that this property was set off to him as his one-third share. No evidence was introduced as to the value of the premises in 1966. Respondent stated that he obtained quit-claim deeds from his brother and sister as his share of the estate without the payment of cash consideration; however, petitioner testified that the interests of respondent's brother and sister in the property were purchased with marital funds. Respondent also stated that various improvements were made on the property by himself and his family and paid for from marital funds. The property was valued at $45,000 and the improvements at $3,800. The trial court assigned the property to respondent as his nonmarital property and considered the improvements as marital property, awarding each party one-half of their value.

■■ In a nonjury trial where there is conflicting testimony, the determination of the witnesses' credibility is for the trier of facts. The trial court's findings will not be disturbed unless they are manifestly against the weight of the evidence. (Cf. Stallings v. Stallings (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065.) The evidence adduced at the hearing in the instant case supported a finding that respondent had acquired the property in an agreed settlement of his mother's estate as his share of the estate. It was, therefore, respondent's nonmarital property. The testimony of both petitioner and respondent established that payment for the improvements on the property came from marital funds, and the trial court properly divided their value between the parties. Further, since there was no evidence introduced as to the value of the property in 1966, it would have been impossible for the trial court to divide any increase in its value, which would have been marital property.

The parties also acquired numerous stocks both before and during the marriage. On appeal, petitioner raises as error the disposition of the Ralston Purina stock and the Bank of Belleville stock and the failure of the court to include the proceeds from the sale of the I.D.S. and Marion Labs stock in the property division.

Considering first the Ralston Purina stock, the evidence indicates that the parties owned a total of 2220 shares; 1770 shares were registered in the name of Gaines Smith, 330 shares in the name of Gaines N. Smith, and 120 shares were registered jointly in the names of Iona M. Smith and Gaines N. Smith. Respondent testified that he had initially purchased 38 shares of Ralston Purina stock prior to the October 1956 marriage of the parties. He testified that all of the shares presently owned by him are a result of "stock splits and stock dividends" from the shares he purchased prior to the marriage and while he was an employee of Ralston Purina. Petitioner introduced business records of Ralston Purina demonstrating that various shares had been issued to respondent since 1956. The records of issuance,

however, did not indicate whether the stock issued was a result of a purchase or a stock split or dividend. Respondent testified repeatedly that he had not purchased any Ralston Purina stock since 1955 and attributed the numerical increase in shares to stock splits and dividends. Respondent also testified that the 120 shares registered in both petitioner's and his names were a result of a transfer of 10 or 20 shares by him to petitioner and respondent jointly because he wanted petitioner to have "something additional." Petitioner testified that the 120 shares were purchased by her from the insurance proceeds received as the result of her daughter's death. The trial court awarded to respondent 2100 shares of Ralston Purina stock as his nonmarital property and found that the remaining 120 shares were marital property, dividing them equally between the parties.

Petitioner contends that she is entitled to one-half of all the Ralston Purina stock registered in the name of respondent alone, with the exception of the 38 shares acquired by respondent prior to the marriage. She bases this claim on the evidence that the dates of issuance of such stock were subsequent to the marriage of the parties. She further contends that she should be awarded all of the 120 shares registered in the parties' names as joint tenants as her nonmarital property because they were acquired solely with her funds.

■■ The trial record pertaining to the issuance of Ralston Purina stock does not disclose whether the increase in the number of shares resulted from stock splits, stock dividends or purchases. Any increase in respondent's holdings of Ralston Purina stock which resulted from stock splits relating to the original 38 shares owned by respondent remain respondent's nonmarital property. The court in *In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 777-78, 407 N.E.2d 1045, 1048, in discussing the status of stocks acquired due to stock splits resulting from stocks acquired prior to the marriage stated:

"The shares owned prior to the marriage, or received as an inheritance during the marriage, are undeniably Robert's nonmarital property under Section 503(a)(6) or 503(a)(1). Jane contends, however, that the remainder of the shares were 'acquired' during the marriage and are thus presumed to be marital property under section 503(b). It would appear that if the shares received through stock splits were 'acquired' during the marriage, at least some of those shares would not technically fit into any of the categories in section 503(a), which categorization would overcome the presumption of marital property. The statute does state that the 'increase in value of property acquired before the marriage' is nonmarital property. (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(5).) Thus, if shares acquired through stock splits were to be considered an 'increase in value' of the original stock, those shares acquired

through splits of stock owned by Robert before marriage would be nonmarital by virtue of section 503 (a)(5). However, stock splits do not actually increase the value of an ownership interest, but merely increase the number of shares held. Thus, if stock acquired through stock splits is considered to be technically the same property as the shares held before the split, all the new shares would clearly retain the same character as the originals. Either analysis clearly results in the characterization of much of Robert's stock as nonmarital, except for shares acquired through splits of stock acquired by Robert during the marriage as an inheritance."

Respondent urges on appeal that all but 38 shares of the Ralston Purina stock were received by him as "stock splits and dividends." However, the trial record does not disclose the origin of such stock other than the original 38 shares purchased by respondent; consequently, it is not possible to determine whether the 2100 shares of Ralston Purina stock awarded to respondent by the court was made up of the original purchase of 38 shares and subsequent stock splits or whether they included some stock dividends, which would be income received during the marriage and, as such, marital property. The 120 shares of Ralston Purina held jointly by petitioner and respondent were found by the court to be marital property. The evidence was conflicting with respect to whether petitioner's or respondent's funds were used in the acquisition of these stocks. If petitioner's funds were used, the 120 shares would be her separate nonmarital property under *Preston* and *Dietz*, while if they were a result of stock splits or stock dividends, their precise source must be determined. In either event, the court erred in classifying the jointly owned 120 shares of Ralston Purina stock as marital property based on the record before it.

Therefore, it is necessary to remand this cause to enable the trial court to consider further evidence regarding the origin of the Ralston Purina stock received by respondent subsequent to the purchase of the original 38 shares.

Respondent and petitioner also owned 37 shares of Bank of Belleville stock. Twenty-five shares were registered in petitioner's name individually and 12 shares were registered in respondent's name individually. Petitioner's and respondent's testimony were in conflict concerning the date and method of acquisition of this stock. Respondent testified that all the stock was purchased around 1961 with proceeds from the sale of some of his Ralston Purina stock. Petitioner testified that the 25 shares were purchased by her out of the proceeds of her daughter's insurance. The trial court assigned 12 shares to respondent as his nonmarital property and ordered the remaining 25 shares to be divided equally between the parties.

The record indicates that originally 20 shares of Bank of Belleville stock were purchased and that two certificates for ten shares each were issued, one being registered in the name of petitioner and one in the name of respondent. Subsequently, additional certificates were issued with similar registrations. Apparently the additional stock was not purchased; however, the record is silent as to whether the additional shares were received as stock splits or stock dividends.

Petitioner does not contend that the 25 shares of Bank of Belleville stock registered in her name individually are her separate nonmarital property. Instead, she urges that all the Bank of Belleville stock is marital property, to be divided between the parties.

Regardless of the contentions of the parties, the one consideration compelled by the undisputed facts is the motive of respondent in registering the Bank of Belleville stock in the name of petitioner. His motive is material because it is indicative of the current ownership of such stock. If, in fact, the stock was purchased with funds received by respondent from the sale of Ralston Purina stock, as he testified it was, then why did he cause it to be registered in the name of petitioner? We conclude that respondent in such case intended a gift of the stock by him to petitioner. If, on the other hand, petitioner purchased the stock with her own funds, as she testified, they would remain her nonmarital property.

We have held in *In re Marriage of Dietz* and *In re Marriage of Preston* that property acquired exclusively with nonmarital property remains nonmarital property, so long as the source of funds can be traced to the initial nonmarital asset without affirmative proof of an intent to "transmute" the nonmarital property into marital property. In *Dietz* we held that the effect of section 503(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2)) "is to destroy the presumption heretofore existing that a transfer or conveyance of property from one spouse to another or into their joint names is presumptively a gift of the property or funds even though the property or funds were acquired before marriage." *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 1032, 395 N.E.2d 762, 764.

■■ In *Dietz*, before the marriage, the wife had furnished most of the funds to construct a dwelling on real estate owned by the husband, and in *Preston* we were considering transfers of nonmarital funds of one spouse to himself and his spouse as joint tenants. Therefore, those portions of our opinions in *Dietz* and *Preston* are *dicta* in which we held that transfers or conveyances of property "from one spouse to another" are no longer presumed to be gifts. We now conclude that where one spouse acquires property with his own funds and causes title thereto to be registered in the individual name of the other spouse, a rebuttable presumption arises that

the spouse who furnishes the consideration has made a gift of such property to the other spouse. Such presumption, although it is not conclusive, can only be overcome by clear, convincing and unmistakable evidence that no gift was intended. *Cf. Brongel v. Brongel* (1977), 48 Ill. App. 3d 27, 362 N.E.2d 750; *Lawyer v. Lawyer* (1974), 19 Ill. App. 3d 571, 312 N.E.2d 7; *Baker v. Baker* (1952), 412 Ill. 511, 107 N.E.2d 711.

In the case at bar, respondent presented no evidence to establish that a gift of the Bank of Belleville stock was not intended as a gift to petitioner. He bases his claim to ownership solely on his testimony that such stock was purchased with his own funds. Therefore, if respondent's funds were used to purchase the stock registered in petitioner's name, as he testified, we conclude that respondent has failed to rebut the presumption that he intended to make a gift to petitioner of such stock.

Therefore, we hold that the original 10 shares of Bank of Belleville stock registered in the name of petitioner is her separate nonmarital property. However, the record does not disclose whether subsequent issues of the same stock registered in petitioner's name were stock splits or stock dividends. Therefore, it is necessary that we remand this cause to the trial court for determination of the basis for the issuance of the Bank of Belleville stock registered in the name of petitioner subsequent to the original issue to her.

Petitioner further contends that the trial court erred in failing to include the proceeds from the sale of the I.D.S. and Marion Labs stocks in its division of marital property. Respondent testified that he sold these stocks in early 1978 for a total of approximately $5,000. He testified that he sold 400 or 500 shares of I.D.S. and around 50 shares of Marion Labs shortly after he was released from the hospital.

The trial court did not make any specific findings regarding the money received from the sale of the Marion Labs and I.D.S. stock. However, there was no evidence in the record that respondent appropriated the proceeds to his own use or that the proceeds were used for any purpose other than the payment of marital debts. We find that the trial court did not err in failing to include those funds in its division of the property.

The parties also had numerous savings accounts at different banks and savings and loan institutions. Petitioner introduced records from Citizens Savings and Loan and Midwest Home Savings and Loan as evidence of the parties' various accounts and the transactions involving those accounts. Frank Haegelstein, assistant treasurer at First Mutual Savings and Loan, testified concerning the accounts held by petitioner and respondent at First Mutual.

Petitioner and respondent had five savings accounts at Citizens Savings and Loan. Gaines B. Smith, the son of the parties, and William

Koriath, petitioner's son, both were indicated as having an interest in the certificates of certain of the accounts. The Smiths also had two accounts at Midwest Home Savings and Loan, both registered in the names of Gaines and Iona Smith. Petitioner and respondent had several savings accounts at First Mutual Savings and Loan. These accounts were registered in the names of Gaines and Iona Smith; however, Gaines B. Smith was designated as being entitled to ownership of a portion of the accounts. The record indicates that numerous transfers of funds were made into and from these accounts by both petitioner and respondent for the payment of debts and other obligations. On two occasions, petitioner closed out savings accounts in which respondent was registered as part owner and transferred the funds to Indianapolis, Indiana, claiming that the funds in both accounts were part of the proceeds of her daughter's insurance.

The trial court ordered that the balances remaining in Citizens Savings & Loan accounts number 110587, 133045, 140696, and 421492, in accounts number 10202, 5199, 10257, and 7425 at First Mutual Savings and Loan, and in accounts number 0-194 and 15966 at Midwest Home Savings and Loan, on January 3, 1979, the date of the original judgment, be divided equally between the parties.

Petitioner contends that the trial court erred in dividing the balances in the joint bank accounts as they existed on January 3, 1979, and in not awarding her one-half of the balances of the bank accounts prior to the withdrawals by respondent.

The trial court's order provided that the balances in the bank accounts as of January 3, 1979, be divided equally between the parties. The funds which were withdrawn from the parties' bank accounts prior to that date were used, according to respondent's testimony, to purchase the Ford pickup truck and to pay various bills such as insurance premiums, real estate taxes, school expenses for their son, living expenses and medical expenses. Respondent also testified that he had used a portion of the withdrawals to retire loans taken out to acquire stocks which the trial court divided equally between the parties.

■■ The trial court did not make specific findings with respect to the funds withdrawn from the accounts by respondent. However, the record supports the conclusion that such funds were not diverted to respondent's personal use since he testified that the funds he withdrew were used to pay legitimate debts incurred during the marriage. The record is adequate to provide this court with a basis upon which to review the propriety of the property division. Therefore, no specific findings were necessary. (*Stallings v. Stallings.*) Based on the record, we find that the trial court did not err in dividing the January 3, 1979, balances in the joint savings accounts. This conclusion is also supported by the court's order

that respondent would be responsible for all debts incurred prior to the filing of the original petition for dissolution of marriage.

The trial court found that respondent was the owner of a Keough plan, which had a value of $11,800, that petitioner possessed an I.R.A. account with a value of $2,114.34, and that both were marital property. The court ordered respondent to pay petitioner $4,842.83 in release of each party's interest in the other's pension plan.

Petitioner contends that the trial court erred in ordering the division of the pension plans because there was no evidence in the record pertaining to her I.R.A. account.

The record established that respondent testified that petitioner had an I.R.A. account which respondent funded by his reimbursing petitioner for deductions made from her salary for dependents' health coverage. Respondent also stated that he had a Keough plan worth $11,800. This evidence was sufficient to support the order of the trial court with respect to the pension plans.

Petitioner next contends that the trial court erred in finding that the 1977 Ford pickup truck was the property of Gaines B. Smith, the son of the parties. She urges that the truck should have been considered marital property.

Petitioner testified that the vehicle was purchased as a family vehicle and used for hauling various items back and forth between the farm owned by the parties and Belleville. Respondent testified that the truck was purchased for the use of the family but was subsequently given to their son, who currently had it with him at college. Respondent initially testified that title to the truck was in his son's name but then testified he was unsure how the truck was titled.

The trial court's finding that the truck was a gift to the son of petitioner and respondent was not against the manifest weight of the evidence and therefore will not be disturbed.

Petitioner asserts that the trial court erred in finding the value of Gaines Financial Corporation to be $500 and dividing the value equally between the parties. Petitioner argues that the State and Federal governments required that $6,000 cash remain on deposit and that such sum is marital property since it was drawn out of a joint savings account. Further, she urges that she should have been awarded one-half ownership of the stock of the corporation. Respondent testified that he was the sole shareholder of Gaines Financial Corporation. He also stated that the corporate savings account did have a balance of $6,000 but that it was the only asset of the corporation. Six thousand dollars was required to establish the corporation, and respondent testified that $4,500 of that sum was acquired through a presently unpaid loan against his insurance.

It is impossible to ascertain why the value of the corporation was fixed $500 when the only evidence in the record pertaining to its value

established the existence of the $6,000 corporate savings account. Taking into consideration the $4,500 insurance loan testified to by respondent, the net worth of the corporation would be $1,500, since there is no evidence of other assets or liabilities of the corporation. Accordingly, it is necessary to remand this cause to the trial court for a redetermination of the value of the corporation and for its division between the parties.

Lastly, petitioner contends that the trial court erred in not awarding her maintenance and attorney fees.

■■ The division of marital property is one factor required to be considered in determining whether to award maintenance and attorney fees and, if any award is made, its amount. (Ill. Rev. Stat. 1977, ch. 40, pars. 504(b)(1) and 508; *Olsher v. Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) Therefore, this cause must be remanded to the trial court for reconsideration of petitioner's request for maintenance and attorney fees based on the redetermination of the property award. *Olsher v. Olsher*.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed in part and reversed in part and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed and remanded in part.

SPOMER, J., concurs.

Mr. JUSTICE HARRISON, concurring in part and dissenting in part:

I concur with the opinion of the court, but dissent in part. I do not agree with the majority that stock dividends would be income received during the marriage and, as such, are marital property. A stock dividend is not a dividend in the usual sense, which is a cash distribution to stockholders of profits on their investments—it is ordinarily an increase in the number of shares declared out of profits, the increased number representing exactly the same property as was represented by the smaller number of shares. It is nothing more than a process in corporation bookkeeping. Thus, all the new shares would retain the same character as the stock purchased by Gaines Smith before the marriage. The subject statute does provide that "property acquired before the marriage" is nonmarital property. Even if the new shares are considered an increase in value of the stock purchased before the marriage, "the increase in value of property acquired before the marriage" is nonmarital property. Ill. Rev. Stat. 1979, ch. 40, par. 505(a)(5) and (6).

I further dissent regarding that portion of the majority opinion that holds a rebuttable presumption arises that a spouse who furnishes the consideration has made a gift to the other spouse when he acquires

182

property and causes title to be registered in the name of the other spouse. *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332.